**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **DIETGOAL INNOVATIONS LLC,** | **CIVIL ACTION NO. 2:12-cv-00764-WCB-RSP** |
| **Plaintiff,** | **(Consolidated)** |
| **v.** | **LEAD CASE** |
| **CHIPOTLE MEXICAN GRILL, INC.,** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**OF INVALIDITY PURSUANT TO 35 U.S.C. § 101**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ..................................... 1

II.    STATEMENT OF ISSUES ................................................................................. 3

III.   STATEMENT OF UNDISPUTED MATERIAL FACTS ................................... 3

IV.   LAW OF SUMMARY JUDGMENT ................................................................. 8

V.    ARGUMENT: THE '516 PATENT CLAIMS ARE NOT PATENT ELIGIBLE UNDER 35 U.S.C. § 101 ............................................................................... 10

        1.   "Computerizing" the Abstract Idea of Meal Planning is Not Sufficient ........................................................................ 18

        2.   The Dependent Claims Do Not Add Significant Patentable Subject Matter ........................................................................... 22

VI.   CONCLUSION ................................................................................................ 26

**Defendants' Motion for Summary Judgment of Invalidity Pursuant to 35 U.S.C. § 101—Page** i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Accenture Global Services, GmbH v. Guidewire Software, Inc.*,
    728 F.3d 1336 (Fed. Cir. 2013)..........................................................................*passim*

*Bancorp Servs., LLC v. Sun Life Assurance Co. of Canada*,
    687 F.3d 1266 (Fed. Cir. 2012)..........................................................................*passim*

*In re Bilski*,
    545 F.3d 943 (Fed. Cir. 2008) (*en banc*), *aff'd*, *Bilski II*, 130 S. Ct.
    3218 (2010)......................................................................................3, 8, 9, 13

*Bilski v. Kappos*,
    130 S. Ct. 3218 (2010) ......................................................................................*passim*

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)...............................................................................................8

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*,
    No. 6:12-cv-675-LED, D.I. 1337, slip op. (E.D. Tex. Jan. 21, 2014)
    ........................................................................................5, 14, 20, 24

*CLS Bank Int'l v. Alice Corp.*,
    717 F.3d 1269 (Fed. Cir. 2013) (*en banc*), *cert. granted*, 2013 U.S.
    LEXIS 8777 (Dec. 6, 2013)
    ........................................................................................8, 11, 16, 19

*In re Comiskey*,
    554 F.3d 967 (Fed. Cir. 2009)...............................................................12, 13

*Cyberfone Sys., LLC v. CNN Interactive Group, Inc.*,
    Nos. 2012–1673, 2012–1674, 2014 WL 718153 (Fed. Cir. Feb. 26,
    2014)
    ........................................................................................9, 12, 17, 20

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011)..........................................................................*passim*

*Dealertrack, Inc. v. Huber*,
    674 F.3d 1315 (Fed. Cir. 2012)..........................................................................*passim*

**Defendants' Motion for Summary Judgment of Invalidity Pursuant to 35 U.S.C. § 101—Page** ii

*Diamond v. Diehr*,
      450 U.S. 175, 101 S.Ct. 1048 (1981)......................................................................................19

*DietGoal Innovations LLC v. Bravo Media LLC*,
      Case No. 13-8391 (S.D.N.Y) ..............................................................................................3

*DietGoal Innovations LLC v. Taco Mayo Franchise Sys., Inc.*,
      Case No. 13-372 (W.D. Okla.) .................................................................................. *passim*

*Fort Props., Inc. v. American Master Lease LLC*,
      671 F.3d 1317 (Fed. Cir. 2012)........................................................................................8, 12

*Gottschalk v. Benson*,
      409 U.S. 63 (1972)........................................................................................................19, 20

*Lumen View Tech. v. Findthebest.com, Inc.*,
      No. 13-3599, 2013 WL 6164341 (S.D.N.Y. Nov. 22, 2013).............................. *passim*

*Parker v. Flook*,
      437 U.S. 584 (1978).......................................................................................................20, 24

*Research Corp. Technologies v. Microsoft Corp.*,
      627 F.3d 859 (Fed. Cir. 2010)..............................................................................................21

*In re Schrader*,
      22 F.3d 290 (Fed. Cir. 1994)................................................................................................12

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
      601 F .3d 1319 (Fed. Cir. 2010)...........................................................................................21

*SmartGene, Inc. v. Advanced Biological Laboratories*,
      No. 2013-1186, 2014 WL 259824 (Fed. Cir. Jan. 24, 2014) .............................. *passim*

*Ultramercial, Inc. v. Hulu, LLC*,
      722 F.3d 1335 (Fed. Cir. 2013).......................................................................................18, 24

**Statutes**

35 U.S.C. § 101.................................................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 56(c) ....................................................................................................................8

Manual of Patent Examining Procedure § 2106.II.B.1(d)(f) (8th ed. Rev. 9,
      Aug. 2012), Exhibit 3.................................................................................................................3

**Defendants' Motion for Summary Judgment of Invalidity Pursuant to 35 U.S.C.
§ 101—Page** iii

Memorandum: Interim Guidance for Determining Subject Matter
    Eligibility for Process Claims in View of *Bilski v. Kappos* ..........................................3

MPEP § 2106.II.B.1(d)(f), Exhibit 3 ...............................................................................3

U.S. Patent No. 6,585,516............................................................................... *passim*

**Defendants' Motion for Summary Judgment of Invalidity Pursuant to 35 U.S.C.
§ 101—Page** iv

Defendants respectfully submit this Motion for Summary Judgment Pursuant to 35 U.S.C. § 101.  As discussed herein, the claims of the Patent asserted against Defendants Chipotle Mexican Grill, Inc.; Doctor's Associates, Inc. d/b/a Subway; Marco's Franchising, LLC; Red Robin International, Inc.; Tyson Foods, Inc.; Genghis Grill Franchise Concepts, LP; and Whataburger Restaurants LLC (collectively, "Defendants") by Plaintiff DietGoal Innovations, LLC ("Plaintiff" or "DietGoal") are directed to subject matter that is not patentable under 35 U.S.C. § 101.  These claims disclose processes which may be carried out entirely within the human mind, and are therefore ripe for invalidation.

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

The claims of U.S. Patent No. 6,585,516 ("the '516 Patent") are directed to abstract ideas and are thus manifestly unpatentable.  While 35 U.S.C. § 101 (hereafter, "§ 101") allows for a broad scope of patent-eligible subject matter, courts have long held that § 101 does not permit patenting of:  (1) mental processes that can be performed in the human mind, or by the use of pen and paper; and (2) sweeping abstract ideas.  *Bilski v. Kappos*, 130 S. Ct. 3218 (2010) ("*Bilski II*").

At its core, the '516 Patent claims nothing more than the abstract concept of meal planning to meet nutritional goals, something that people do every day and have done for decades, whether ordering food at a restaurant or planning their own meals for the week at home.  More specifically, the '516 Patent claims the steps that could be performed in the mind of viewing meal options with corresponding nutritional information (*e.g.*, calories or nutritional content), selecting a meal, and then comparing the nutritional information for the selected meals to the individual's nutritional goals.  As processes that can be performed in the human mind, the '516 Patent claims disclose unpatentable abstract ideas.  Further, while the claims vaguely recite that this abstract process is "computer-

**Defendants' MSJ of Invalidity Pursuant to 35 U.S.C. § 101—Page 1**

ized," no new or special machine and no intricate programming is disclosed—much less claimed—in the Patent.  Instead, the Patent discloses and claims nothing more than a standard "computer" and its generic components (namely, a "user interface" and "databases") to perform the abstract, mental process of meal planning to achieve eating goals.

A series of cases from the U.S. Supreme Court and the Federal Circuit over the past four years confirms that abstract ideas just like these are not patent eligible under § 101, even if coated in a veneer of "computer" implementation.  For example, in *Cyber-Source Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372-77 (Fed. Cir. 2011), the Federal Circuit affirmed summary judgment of invalidity under § 101 of claims for a process of collecting and organizing data regarding credit card transactions using computers over the Internet.  Likewise, in *Accenture Global Services, GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1338-39 (Fed. Cir. 2013), the Court held that § 101 precluded claims to a "system for generating tasks to be performed in an insurance organization," including "a computerized a database of tasks, a means to allow a client to access those tasks, and a set of rules that are applied to that task on a given event."  Recently, the Southern District of New York applied these cases and principles to find that § 101 prohibited claims to a "method of matchmaking whereby one or more parties on each side input attribute preferences and intensity of preference data and then a computer matches the parties on each side by a 'closeness-of-fit' process and produces a list."  *Lumen View Tech. v. Findthebest.com, Inc.*, No. 13-3599, 2013 WL 6164341, at *2 (S.D.N.Y. Nov. 22, 2013).  Like the claims addressed in those cases, and numerous others, the claims in the DietGoal patent are ineligible for patenting because they recite nothing but an abstract concept performed on a general purpose computer that could be performed in the mind.

**Defendants' MSJ of Invalidity Pursuant to 35 U.S.C. § 101—Page** 2

It is appropriate for this Court to address the validity of the '516 Patent under § 101 as a matter of summary judgment. Whether the '516 Patent's claims are "drawn to patent-eligible subject matter under § 101 is a threshold inquiry" and "an issue of law." *In re Bilski*, 545 F.3d 943, 950-51 (Fed. Cir. 2008) (*en banc*) ("*Bilski I*"), *aff'd*, *Bilski II*, 130 S. Ct. 3218 (2010). In this way, a summary judgment determination under § 101 is particularly appropriate. *See Bilski I*, 545 F.3d at 951.[1]

## II.     STATEMENT OF ISSUES

Are Defendants entitled to summary judgment of invalidity of the '516 Patent pursuant to 35 U.S.C. § 101, in light of the asserted claims' disclosure of an abstract process capable of being performed entirely within a human's mind?

## III.     STATEMENT OF UNDISPUTED MATERIAL FACTS

1.     The '516 Patent (attached as Exhibit 1) was issued by the Patent Office in 2003, long before the Supreme Court's decision in *Bilski*.[2] It generally relates to systems

---

[1] To date, no court has made a determination as to whether or not the '516 patent claims are patent ineligible under § 101. The issue is currently pending before the Southern District of New York, which held oral argument as to Defendant Bravo Media LLC's corresponding motion for summary judgment on May 20, 2014. *DietGoal Innovations LLC v. Bravo Media LLC*, Case No. 13-8391 (S.D.N.Y). On March 26, 2014, the Western District of Oklahoma denied Defendant Taco Mayo's Motion to Dismiss for Failure to State a Claim without prejudice, noting that "claim construction, along with supporting evidence, may be helpful in determining whether the '516 Patent satisfies the subject matter eligibility requirements of § 101." D.I. 104. *DietGoal Innovations LLC v. Taco Mayo Franchise Sys., Inc.*, Case No. 13-372 (W.D. Okla.). In the instant case, of course, this Motion is made against the backdrop of the arguments made at the February 4, 2014 *Markman* hearing, and the Court's ultimate claim constructions (D.I. 308).

[2] After the Supreme Court issued its *Bilski* decision, the Patent Office was forced to update its guidelines that its patent examiners used to screen patent applications that improperly attempted to monopolize abstract ideas and mental processes. For example, in revising its guidelines post-*Bilski*, the Patent Office recognized that the presence in a patent claim of a "general concept" is an important indicator that the claim is drawn to an abstract idea. Manual of Patent Examining Procedure (MPEP) § 2106.II.B.1(d)(f) (8th ed. Rev. 9, Aug. 2012), Exhibit 3; *see also* Memorandum: Interim Guidance for Determining Subject Matter Eligibility for Process Claims in View of *Bilski v. Kappos* from Robert W. Bahr, Acting Assoc. Comm'r for Patent Examination Policy, to Patent Examining Corps (July 27, 2010), Exhibit 4. The PTO went on to explain, echoing the core holding of *Bilski*, that "[e]xamples of general concepts include …[b]asic economic practices or theories (e.g., hedging, insurance, financial transactions, marketing)." MPEP

**Defendants' MSJ of Invalidity Pursuant to 35 U.S.C. § 101—Page** 3

and methods for meal analysis, training, and planning.  *See* '516 Patent, Exhibit 1, 1:8-11.[3]

2.      The Patent purports to allow a user to visualize (via a user interface) meals from a database, select certain meals, and see the impact of that meal selection on the user's eating goals.  More specifically, the '516 Patent specification discloses the following steps:

> First, the Meal Database and Food Database can be prepared. Second, the user can choose meals for a particular day. Third, the user can decide whether or not to change one or more of the meals he has chosen for the particular day. If the user decides to change his chosen meals, the user can edit or create new meals using the Meal Builder. If the user decides not to change his choices, or after the user changes his choices, the user can save the meals for the particular day.

'516 Patent, Exhibit 1, 3:11-20.

3.      Figure 3 of the '516 Patent, for example, depicts an exemplary high-level outline for meal selection following the steps above.



FIG.3

---

§ 2106.II.B.1(d)(f), Exhibit 3.  The weaker guidelines in place before *Bilski* may help to explain why this Patent issued in the first place.

[3] Citations to the '516 Patent, such as 1:8-11 above, refer to the Patent's numbered columns and lines.

**Defendants' MSJ of Invalidity Pursuant to 35 U.S.C. § 101—Page 4**

'516 Patent, Exhibit 1, Fig. 3.

4.      The specification also discloses certain generic computer components for use with this method.  These components include meal and food "databases" consisting of pre-set meals and food objects, respectively.  *See* '516 Patent, Exhibit 1, 3:51-53.

5.      In addition, a "user interface" provides picture menus that include meal/food images, based on the database information, from which the user can mix and match to meet customized goals.  *See* '516 Patent, Exhibit 1, 2:46-2:48.

6.      The "user interface" also provides a "meal builder" that allows the user to change a meal and view the meal's impact on customized goals. *See* '516 Patent, Exhibit 1, 2:65-3:1.

7.      The Court rejected Defendants' request to limit the "picture menus" and "meal builder" terms to the disclosed user interface designs.  *Compare* D.I. 278 at 15 (explaining that "Picture Menus" was a "coined term"), 24 (explaining that "Meal Build-er" was a "coined term") *with* D.I. 308 at 43–48.

8.      According to the '516 Patent, the prior art lacked "effective tools [] that can adequately train people to understand and immediately recognize the significance of," for example, the "impact of customized meals on dietary goals." *See* '516 Patent, Exhibit 1, 1:26-39.

9.      The '516 Patent states that "no tools exist that allow users to incorporate a behavior analysis into their eating goals, and their training or planning for meeting those eating goals." '516 Patent, Exhibit 1, 1:40-42.

10.     The '516 Patent, however, discloses very little, if anything, regarding the specifics of how that supposed invention is an effective tool over the long-existing mental process of meal planning, other than presumably speeding up the process via a computer.

**Defendants' MSJ of Invalidity Pursuant to 35 U.S.C. § 101—Page 5**

Indeed, the '516 Patent discloses only a general purpose computer, not some specialized machine.  For example, Figure 1 of the Patent shows the supposed "architecture" of the alleged invention:



FIG.1

'516 Patent, Exhibit 1, 3:43-54 & Fig 1.

11.    But, neither Figure 1 nor any other part of the Patent discloses any specific machines other than a basic "computer" and its generic components such as a "user inter-face" and "database."  Nor does the '516 Patent identify any particular algorithm or intri-cate computer programming or software, by which the basic computer helps to perform the meal planning.  *See*, '516 Patent, Exhibit 1, *passim*.

12.    The '516 Patent includes four "independent" claims (1, 2, 12, and 13) re-citing a "system of computerized meal planning" or a "method of computerized planning that can influence behavior."  '516 Patent, Exhibit1, 6:62, 7:1, 7:44-45, 8:9-10.

13.    The independent claims are listed below for convenience:

| Claim 1 | Claim 2 |
|---|---|
| A system of computerized meal planning, comprising:<br>   a User Interface;<br>   a Database of food objects organizable<br>      into meals; and | A system of computerized meal planning, comprising:<br>   a User Interface;<br>   a Database of food objects; and<br>   a Meal Builder, which displays on the |

**Defendants' MSJ of Invalidity Pursuant to 35 U.S.C. § 101—Page 6**

| | |
|---|---|
| at least one Picture Menus, which displays on the User Interface meals from the Database that a user can select from to meet customized eating goal. | User Interface meals from the Database, and wherein a user can change content of said meals and view the resulting meals' impact on customized eating goals. |
| **Claim 12** | **Claim 13** |
| A method of computerized planning that can influence behavior, comprising:<br>    preparing a Database of food objects;<br>    allowing a user to choose meals from one or more Picture Menus, which display on a User Interface meals comprised from the food objects from the Database that the user can mix and match to meet customized eating goals, for a particular amount of time; and<br>allowing a user to save the meals. | A method of computerized planning that can influence behavior, comprising:<br>    preparing a Database of food objects;<br>    allowing the user to decide whether or not to change one or more meals comprising food objects; and<br>if the user decides to change one or more of the meals, allowing the user to change the meals using a Meal Builder, which displays on the User Interface the food objects from the meals from the Database, corresponding to the Picture Menus, where the user can change and view the meals' impact on customized eating goals. |

14.     Claims 1 and 12 involve a person choosing "meals" from a database of visual "food objects" "to meet customized eating goals."  Claims 2 and 13 are similar, but also involve a user being able to change the contents of meals and "view the meals' impact on customized eating goals."  '516 Patent, Exhibit 1, 3:43-54 & Fig 1.

15.     The dependent claims provide slight refinement of the general concept of meal planning to meet eating goals, but fail to take the claims beyond an abstract concept. These additional elements of the original dependent claims (numbered 3-11 and 14-18) are:

- using the meal builder to change the contents of a meal and "view the meals' impact on customized eating goals" (claims 3 and 14)
- the meal planning is designed to impact eating behavior (claim 4)
- "food objects" are images (claim 5)
- collecting and analyzing information about a "user's instinctive eating tendencies and preferences" (claims 7, 8, 10, 15, and 17)
- comparing the information to a set of goals (claims 9, 11, 16, and 18)

**Defendants' MSJ of Invalidity Pursuant to 35 U.S.C. § 101—Page** 7

16.     Further, during reexamination, Plaintiff added yet more dependent claims (numbered 19-61).  Like the original dependent claims, these new claims fail to place concrete "meat" on the abstract "bones" of the claimed meal planning process.  The additional limitations in the new claims are:

- gathering and storing information about food preferences from users, including likes, dislikes, ratings, reviews, comments, etc. (claims 19-22, 27-28, 43-47, and 52-53)
- saving meals in a database (claims 23 and 48)
- displaying nutritional information about a meal (claims 24-26 , 32, 34, 38, 49-51, 57, and 59)
- displaying a user's customized eating goals (claims 29 and 54)
- displaying meals, "food objects," and images of meals (claims 30, 36-37, 40, 55, and 61)
- displaying "controls" for modifying and selecting meals (claims 31, 33, 35, 56, 58, and 60)
- meals include "food objects" (claim 39)
- searching for a meal (claim 41)
- computing nutrition information for a meal (claim 42)

## IV.     LAW OF SUMMARY JUDGMENT

### A.     Whether A Claim Recites Patent-Eligible Subject Matter Is A Threshold Issue Of Law Particularly Appropriate For Resolution On Summary Judgment

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

"Whether a claim is drawn to patent-eligible subject matter under § 101 is an issue of law" (*Bilski I*, 545 F.3d at 951) and, therefore, particularly appropriate for resolution on summary judgment.[4]  Moreover, patent-eligibility is a "threshold issue" to be de-

---

[4] *See, e.g., Accenture*, 728 F.3d at 1338 (*aff'g* summary judgment of invalidity of claims to a patent-ineligible abstract concept); *CLS Bank Int'l v. Alice Corp.*, 717 F.3d 1269, 1273, 1274 n.1 (Fed. Cir. 2013) (*en banc*) (same), *cert. granted*, 2013 U.S. LEXIS 8777 (Dec. 6, 2013), argument held on March 31, 2014; *Bancorp Servs., LLC v. Sun Life Assurance Co. of Canada*, 687 F.3d 1266, 1272, 1281 (Fed. Cir. 2012) (same); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1330-

**Defendants' MSJ of Invalidity Pursuant to 35 U.S.C. § 101—Page** 8

cided early, regardless of whether the claims may be invalid for failing to meet other stat-

utory requirements for patentability.[5]

### B.    The Proper Framework For Determining Whether A Claim Recites Patent-Eligible Subject Matter

Section 101 provides that patentable subject matter extends to "new and useful

process[es], machine[s], manufacture, or composition[s] of matter." 35 U.S.C. § 101.  In

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, however, the Supreme

Court reiterated that its precedents carve out several broad categories of subject matter

that are *not* eligible for patent protection under § 101, even if they at first appear to fall

within § 101's subject matter:  "Phenomena of nature, … mental processes, and *abstract*

*intellectual concepts* are not patentable, as they are the basic tools of scientific and tech-

nological work."  *Mayo*, 132 S. Ct. 1289, 1293 (2012) (emphasis added) (*quoting*

*Gottschalk v. Benson*, 409 U.S. 63, 67 (1972); *see also Bilski II*, 130 S. Ct. at 3221 ("The

concepts covered by these exceptions are 'part of the storehouse of knowledge of all men

... free to all men and reserved exclusively to none.'") (*quoting Funk Brothers Seed Co. v.*

*Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948)).

The Supreme Court has issued several decisions in the past four years addressing

§ 101 and providing a general framework for courts to use in deciding patent eligibility.

This framework, most recently discussed in *Mayo*, posits whether the claims encompass

one or more of the § 101 prohibitions, such as a mental process, abstract idea, or law of

nature.  132 S. Ct. at 1296-97; *Accenture*, 728 F.3d at 1341.  If so, the question becomes

---

34 (Fed. Cir. 2012) (same); *Fort Props., Inc. v. American Master Lease LLC*, 671 F.3d 1317, 1320-24 (Fed. Cir. 2012) (same); *CyberSource*, 654 F.3d at 1369-76 (same); *Cyberfone Sys., LLC v. CNN Interactive Group, Inc.*, Nos. 2012–1673, 2012–1674, 2014 WL 718153, at *1-4 (Fed. Cir. Feb. 26, 2014) (same); *SmartGene*, 2014 WL 259824 (same); *cf. Lumen View*, 2013 WL 6164341 (granting judgment on the pleadings).

[5] *Bilski I*, 545 F.3d at 950.

**Defendants' MSJ of Invalidity Pursuant to 35 U.S.C. § 101—Page** 9

whether the patent claims "do significantly more than simply describe" that mental process, abstract idea, or law of nature. *Mayo*, 132 S. Ct. at 1297; *see also SmartGene, Inc. v. Advanced Biological Laboratories*, No. 2013-1186, 2014 WL 259824, at *5 (Fed. Cir. Jan. 24, 2014) ("when a claim involves an abstract idea . . . eligibility under § 101 requires that the claim involve 'enough' else—applying the idea in the realm of tangible physical objects (for product claims) or physical actions (for process claims)—that is beyond 'well-understood, routine, conventional activity'") (*quoting Mayo*, 132 S. Ct. at 1294, 1298, 1299)).

## V.     ARGUMENT: THE '516 PATENT CLAIMS ARE NOT PATENT ELIGIBLE UNDER 35 U.S.C. § 101

### A.     The '516 Patent Claims are Directed to the Unpatentable Abstract Concept of Planning Meals to Meet Nutritional Goals

DietGoal's '516 Patent claims nothing but the unpatentable abstract concept of planning meals to meet one's nutritional goals, a process that could be performed in a user's mind or with pen and paper.  Numerous recent cases from the Supreme Court and Federal Circuit illustrate why such claims are not patentable under § 101.

***Bilski***:  In *Bilski*, the claims patented a series of transactions between buyers and sellers of commodities in the energy market, at different fixed rates, to protect or hedge against the risk of price changes.  130 S. Ct. at 3223-24.  The Supreme Court reasoned that the claims merely explained the basic concept of hedging, which "is a fundamental economic practice long prevalent in our system of commerce and taught in any introductory finance class."  *Id.* at 3231.  This concept was not eligible for a patent, even though some claims purported to limit the hedging to the energy and commodities market, because patenting an abstract concept, even for a specific field of use, is not sufficient to escape the prohibition of § 101.  *Id.*

**Defendants' MSJ of Invalidity Pursuant to 35 U.S.C. § 101—Page 10**

***Accenture***:  Following *Bilski*, the Federal Circuit has held that many other basic concepts of business or personal life are not patentable.  In *Accenture*, the court found that claims to a system for generating tasks to be performed in an insurance organization impermissibly claimed an abstract concept.  728 F.3d at 1344-46.  Of course, as is generally the case, the claims appeared more detailed than the concept itself, including numerous generic computer components such as "an insurance transaction database, a task library database, a client component for accessing the insurance transaction database, and a server component that interacts with the software components and controls an event processor, which watches for events and sends alerts to a task engine that determines the next tasks to be completed."  *Id*. at 1338.  Nonetheless, the Court held that, in essence, the claims encompassed nothing more the abstract idea of "generating tasks [based on] rules . . . to be completed upon the occurrence of an event."  *Id*. at 1344.

***CLS Bank***:  Sitting *en banc*, the Federal Circuit in *CLS Bank  International  v. Alice Corp.* confirmed the panel decision that the claims were drawn to "the abstract idea of reducing settlement risk by effecting trades through a third-party intermediary … empowered to verify that both parties can fulfill their obligations before allowing the exchange—i.e., a form of escrow."  717 F.3d at 1286 (plurality opinion of Judges Lourie, Dyk, Prost, Reyna, and Wallach, JJ.).  Although the *en banc* court failed to achieve a majority opinion regarding the precise test to employ, it affirmed the district court's summary judgment of invalidity under § 101.  *Id*. at 1273.[6]

---

[6] In her recent opinion in *Lumen View* finding the claims ineligible under § 101, Judge Cote commented on the *en banc CLS Bank* decision as follows:  "While [*CLS Bank v.*] *Alice* did not produce controlling reasoning, its holding that the method claim patents were invalid has precedential weight and must be followed by lower courts to the extent that the facts regarding any patents challenged in those courts are similar."  2013 WL 6164341, at *8.

**Defendants' MSJ of Invalidity Pursuant to 35 U.S.C. § 101—Page 11**

*Bancorp*:  Likewise, in *Bancorp Services, LLC v. Sun Life Assurance Co. of Canada* , the court found that claims directed to computerized "systems and methods for administering and tracking the value of life insurance policies in separate accounts" encompassed an abstract idea.  *Bancorp*, 687 F.3d at 1269.  More specifically, the claims recited, among a large list of elements, a "policy generator for generating a life insurance policy," a "fee calculator for calculating fees," a "credit calculator for calculating credit for the stable value protected investments," and a "digital storage for storing the policy unit value for the current day."  *Id*. at 1272.  The court nonetheless found that all of these elements amounted to no more than the abstract idea, even though the claims required the use of a computer.  *Id*. at 1277-81.[7]

*Lumen View*:  The Southern District of New York applied these same principles to grant judgment on the pleadings that claims to a "method of matchmaking whereby one or more parties on each side input attribute preferences and intensity of preference data and then a computer matches the parties on each side by a 'closeness-of-fit' process and produces a list" disclosed an unpatentable abstract concept.  *Lumen View*, 2013 WL 6164341, at *2.  The court held that the patent claimed "the idea of bilateral and multilateral matchmaking using a computer in the context of a financial transaction or an enter-

---

[7] *See also Cyberfone*, 2014 WL 718153, at * 2-4 (*aff'g* summary judgment that using a computer to collect, sort, and forward transaction data was an ineligible abstract idea); *Fort Props.*, 671 F.3d at 1318, 1322–23 (finding that a method for "creating a real estate investment instrument" by aggregating real property and, using a computer, "generating a plurality of deedshares" encompassed an abstract concept); *Dealertrack*, 674 F.3d at 1330-34 (finding computer-aided method and system for processing credit applications over electronic networks to claim an abstract concept); *CyberSource*, 654 F.3d at 1367-68, 1376-77 (finding methods for verifying credit card transactions over the Internet to encompass an abstract concept); *In re Comiskey*, 554 F.3d 967, 970–71, 981 (Fed. Cir. 2009) (finding claims to a method for conducting arbitration abstract); *In re Schrader*, 22 F.3d 290, 291, 293–94 (Fed. Cir. 1994) (finding claims for bidding at an auction abstract).

**Defendants' MSJ of Invalidity Pursuant to 35 U.S.C. § 101—Page 12**

prise," which was "preemptive in the broadest sense" and was something that "[m]atchmakers have been doing … for millennia." *Id*. at *8, 9, 10.

The Supreme Court has held that, just like an abstract concept, a process that can be performed entirely in the human mind is also not eligible for patenting. *Mayo*, 132 S. Ct. at 1293 ("[p]henomena of nature . . . mental processes, and abstract intellectual concepts are not patentable") (*quoting Benson*, 409 U.S. at 67). Such processes are also not eligible for patent protection because the "application of [only] human intelligence to the solution of practical problems is no more than a claim to a fundamental principle." *Bilski I*, 545 F.3d at 965. Following the Supreme Court's lead, the Federal Circuit has consistently "refused to find processes patentable when they merely claimed a mental process standing alone and untied to another category of statutory subject matter even when a practical application was claimed." *Comiskey*, 554 F.3d at 980. Thus, "computational methods which can be performed entirely in the human mind are the types of methods that embody the basic tools of scientific and technological work that are free to all men and reserved exclusively to none." *CyberSource*, 654 F.3d at 1373 (emphasis in original) (internal quotations omitted). As with abstract ideas, the following cases regarding processes that could be performed within the human mind are instructive:

***CyberSource***: The patent in *CyberSource* encompassed a method for "verifying the validity of credit card transactions over the Internet" by "a) obtaining information about other transactions that have utilized an Internet address that is identified with the [ ] credit card transaction; b) constructing a map of credit card numbers based upon the other transactions and; c) utilizing the map of credit card numbers to determine if the credit card transaction is valid." *Id*. at 1368 n.1. Some of the claims expressly required that this method be carried out by a computer through "execution of the program instructions

**Defendants' MSJ of Invalidity Pursuant to 35 U.S.C. § 101—Page** 13

by one or more processors of a computer system." *Id*.  The court held that the claimed method was not patentable because it could "be performed in the human mind, or by a human using a pen and paper." *Id*. at 1372.  Allowing such a patent on a process that could be performed within the mind would be to allow someone "to patent the use of human intelligence in and of itself." *Id*. (quoting *Comiskey*, 554 at 980).  The *CyberSource* court went on to find that the addition of a computer did not make any difference because "merely claiming a software implementation of a purely mental process that could otherwise be performed without the use of a computer" is not enough to satisfy § 101.  *Id*. at 1375.

**SmartGene**:  And just recently, in *SmartGene*, the Federal Circuit explained that "section 101 [does] not embrace a process defined simply as using a computer to perform a series of mental steps that people, aware of each step, can and regularly do perform in their heads."  2014 WL 259824, at *4 (citations omitted).  There, the Court found invalid claims to "a method, a system, and a computer program, respectively, for guiding the selection of a treatment regimen for a patient with a known disease or medical condition." *Id*.  The Court affirmed summary judgment because the claims "no more than call on a 'computing device,' with basic functionality for comparing stored and input data and rules, to do what doctors do routinely."  *Id*. at *5.  "[E]very step is a familiar part of the conscious process that doctors can and do perform in their heads."  *Id*.[8]

---

[8] *See also Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, Case No. 6:12-cv-675-LED, D.I. 1337, slip op. at 7 (E.D. Tex. Jan. 21, 2014) (granting judgment on the pleadings that a computerized method for inventory sales was ineligible under § 101 because it essentially claimed a process that could be performed in the mind.  The claim involved a computer performing four steps, which the court "generalized as:  (1) receiving a product query; (2) determining the availability of products and associated options in inventory; (3) preparing a list of available options; and (4) presenting the list.").

**Defendants' MSJ of Invalidity Pursuant to 35 U.S.C. § 101—Page** 14

**Clear with Computers**: This Court, in *Clear with Computers, LLC v. Dick's Sporting Goods, Inc.* granted judgment on the pleadings that a computerized method for inventory sales was ineligible under § 101 because it essentially claimed a process that could be performed in the mind.  Case No. 6:12-cv-675-LED, D.I. 1337, slip op. at 7 (E.D. Tex. Jan. 21, 2014).  The claim involved a computer performing four steps, which the court "generalized as:  (1) receiving a product query; (2) determining the availability of products and associated options in inventory; (3) preparing a list of available options; and (4) presenting the list."  *Id.*

Like all of these cases discussed above, the '516 Patent claims encompass a fundamental, abstract concept that has been in use for a long time by human beings, using their own minds or pen and paper: planning meals to achieve eating goals.  The '516 Patent claims are extremely short, simple, and abstract, encompassing this entire idea of a person planning a meal by visualizing food items, compiling them into a meal, and considering the impact on his or her goals, with the insignificant addition of "computerization."

For example, independent method claims 12 and 13 are directed to a "method" comprising the steps of "preparing a [d]atabase of food objects" and allowing the user to "choose" or "decide" meals that the user can "change" or "mix and match" to meet personal "eating goals."  These steps describe nothing more than decisions that people make every day about what to eat based on known information about the available food options, encompassing the abstract concept of meal planning.  Taking the example of a person wishing to consume only 1,600 calories a day, that person can perform the same process as claim 12 without a computer by opening a recipe book, using its pictures to visualize a meal, writing down on paper the recipe's nutritional value (say 1,200 calories),

**Defendants' MSJ of Invalidity Pursuant to 35 U.S.C. § 101—Page** 15

and then comparing that caloric value to his goal of 1,600 calories in his head.  A person could perform the same process as Claim 13 without a computer if he adds a fatty ingredient to the recipe, and writes down the higher caloric value on the paper (say 1,800 calories), comparing it in his head to his goal of 1,600 calories, and writing down a symbol (*e.g.,* "+") to indicate his goal is now exceeded.  Claims 12 and 13 are thus manifestly ineligible under § 101 because they encompass an abstract concept and a process that could be performed within the user's mind in combination with pen and paper.[9]

The other two independent claims, claims 1 and 2, essentially recite a "system" for performing the "methods" of claims 12 and 13, respectively.  The system of claims 1 and 2, just like the method claims, recite a "[u]ser [i]nterface," a "[d]atabase of food objects," and a decision-making step, described variously as "[p]icture [m]enus" or a "[m]eal [b]uilder."  Claim 1, for example, describes the decision-making element as "[p]icture [m]enus," which display meals "that a user can select from to meet customized eating goal."  Similarly, Claim 2 discloses a "[m]eal [b]uilder," which displays meals "wherein a user can change content of said meals and view the resulting meals' impact on customized eating goals."  However, merely transforming a method claim into a system claim for performing that method makes no difference under § 101.  *See, e.g., Accenture*, 728 F.3d at 1342 ("Because the system claim and method claim contain only minor differences in terminology [but] require performance of the same basic process, they should rise or fall together.") (quotation omitted); *CLS Bank*, 717 F.3d at 1274 n.1 (Lourie, Dyk, Prost, Reyna, & Wallach, JJ., plurality opinion) ("[E]ight judges, a majority, have concluded that the particular method, medium, and system claims at issue in this case should

---

[9] To be clear, the Court held that the '516 patent "does not invoke a mental process."  Although the patent does not *require* a mental process, it nevertheless *could* be performed in the user's mind, which renders it ineligible for patent protection.

**Defendants' MSJ of Invalidity Pursuant to 35 U.S.C. § 101—Page 16**

rise or fall together in the § 101 analysis."); *Bancorp*, 687 F.3d at 1277 (finding that claims to a method and system for performing the method had "no material difference," and "the form of the claims should not trump basic issues of patentability").

Indeed, just like the method claims 12 and 13, the decision-making steps of system claims 1 and 2 utilize nothing more than decisions that are routinely performed by anyone who makes basic, everyday meal-planning decisions.  For example, the decision-making step of claim 1 can be performed by anyone who opens a menu or recipe book with pictures of meal options and chooses a meal that meets their personal "eating goals." Likewise, the decision-making step of claim 2 can be completed by anyone who decides to change the content of a meal, such as by replacing apple slices with potato chips, and who is able to mentally calculate the effect this change will have on the total calorie count of the meal, and on that meal's subsequent ability to meet their personal "eating goals."  Such food-specific calorie information can be memorized by anyone counting caloric intake and, if not memorized, is readily available.  Indeed, the "Deal-A-Meal" diet plan developed in the 1980s by well-known weight loss and fitness personality Richard Simmons is one such early example of a program using color-coded food cards to help people make meal decisions based on calorie content and portion control.  (Deal-A-Meal Instructions and Sample Cards, Exhibit 5, 1992).  All DietGoal's Patent has done is taken such mental steps or card-based systems and applied them to a generic "computer."

The claims of the '516 Patent to the abstract concept of meal planning are no more eligible for a patent than those for hedging risk in the energy market (*Bilski*), gathering and sorting transaction information over a network (*Cyberfone*), administering and tracking life insurance policy values (*Bancorp*); verifying credit card transactions over the Internet (*CyberSource*), applying for credit over the Internet (*Dealertrack*); managing

**Defendants' MSJ of Invalidity Pursuant to 35 U.S.C. § 101—Page** 17

tasks in an insurance agency (*Accenture*), and selecting treatment regimens for medical patients based on symptoms (*SmartGene*).

**B.     The '516 Patent's Claims Fail to Add Anything Significant to this Abstract Concept**

While the claims of the '516 Patent attempt to monopolize the abstract idea of meal planning to meet nutritional goals, the Court cannot end the analysis there.  Instead, the Court must determine whether the claims "do significantly more than simply describe" the abstract idea, mental process, or law of nature.  *Mayo*, 132 S. Ct. at 1297.   In other words, do "additional substantive limitations ... narrow, confine, or otherwise tie down the claim so that, in practical terms, it does not cover the full abstract idea itself." *Accenture*, 728 F.3d at 1341 (Fed. Cir. 2013) (quotation omitted).  The courts have also characterized this analysis as a "preemption analysis" in which the claims are "evaluated to determine whether 'additional substantive limitations ... narrow, confine, or otherwise tie down the claim so that, in practical terms, it does not cover the full abstract idea itself.'"  *Id*. at 1341 (quoting *CLS Bank*, 717 F.3d at 1282); *see also Lumen View*, 2013 WL 6164341, at *8-9.

"[S]imply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable.  *Mayo*, 132 S. Ct. at 1300.  Further, a "claim is not meaningfully limited if it merely describes an abstract idea or simply adds 'apply it.'"  *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1346 (Fed. Cir. 2013).

**1.     "Computerizing" the Abstract Idea of Meal Planning is Not Sufficient**

During letter briefing on this issue, DietGoal has relied on the fact that the claims recite a "computer" to perform the abstract idea and mental process.  See D.I. 392-1 at 2.

**Defendants' MSJ of Invalidity Pursuant to 35 U.S.C. § 101—Page** 18

However, recent § 101 cases consistently hold that recitation of a computer and its generic components such as a user interface or database are not enough to transform claims from an abstract idea or mental process into patent eligible ones.  *See, e.g.*, *SmartGene*, 2014 WL 259824, at *4.  Instead, simply computerizing abstract ideas is completely conventional and unpatentable.

Long ago, the Supreme Court noted that the abstract ideas exception "cannot be circumvented by attempting to limit the use of the [idea] to a particular technological environment."  *Diamond v. Diehr*, 450 U.S. 175, 191, 101 S.Ct. 1048 (1981).  And in *Gottschalk v. Benson*, the Supreme Court found that an algorithm capable of converting binary-coded decimal numerals into pure binary code was an unpatentable abstract idea even though the algorithm had "no substantial practical application except in connection with a digital computer."  409 U.S. 63, 64-67, 71-72, 93 S.Ct. 253 (1972).

Following these principles, the Federal Circuit has now repeatedly confirmed that the use of a "computer to perform [a] mental process … does not impose a sufficiently meaningful limit on the claim's scope.  *CyberSource*, 654 F.3d at 1376 (affirming summary judgment that claims to a computerized method for verifying credit card information over the Internet failed § 101).  "That purely mental processes can be unpatentable, even when performed by a computer, was precisely the holding of the Supreme Court in [*Benson*]."  *CyberSource*, 654 F.3d at 1375.  Likewise, in *Dealertrack*, the court agreed that claims to a method for processing credit applications over electronic networks were not patentable just because they were claimed as computerized:  "Simply adding a

'computer aided' limitation to a claim covering an abstract concept, without more, is insufficient to render the claim patent eligible." *Dealertrack*, 674 F.3d at 1333.[10]

Furthermore, reciting generic components of a computer, such as a database, display device, and input device, is not functionally different than reciting just a "computer" because such components are merely the "physical components for input, memory, lookup, comparison, and output" of "existing computers long in use," not "new machinery." *SmartGene*, 2014 WL 259824, at *4. For example, the following generic components were insufficient to save the claims from § 101 ineligibility:

- *Bancorp* (system claim recited a "policy generator," several "calculators," and "digital storage"), 687 F.3d at 1271;
- *Dealertrack* (claims recited a "computer," "central processor," "application entry and display device," "communications medium," and "terminal device"), 674 F.3d at 1319;
- *Cyberfone* (claim recited receiving transaction data in a "single transmission" from a "telephone"), 2014 WL 718153, at *2;
- *Lumen View* (claims recited "digital storage medium," "remote server," and "communication network"), 2013 WL 6164341, at *1-3; and
- *Clear with Computers* (claims recited "user interface," "server" computer, "client" computer, and communication "via the Internet"), Case No. 6:12-cv-675-LED, D.I. 1337, slip op. at 12-13.

*Accenture* is closest to this case. There, the claims recited many computer components including an "insurance transaction database," a "task library database," a "client component," a "server component," and an "event processor" for the method and system for managing tasks in an insurance agency. 728 F.3d at 1338-39. In the end, however, the Court found that the claims were "essentially a database of tasks, a means to allow a cli-

---

[10] *See also CLS Bank*, 717 F.3d at 1291 (plurality opinion) ("[a]lthough the system claim associates certain computer components with some of the method steps, none of the recited hardware offers a meaningful limitation beyond generally linking 'the use of the [method] to a particular technological environment,' that is, implementation via computers.") (*quoting Bilski*, 130 S. Ct. at 3230); *Lumen View*, 2013 WL 6164341, at *10 ("The fact that the [asserted] patent's matchmaking claim is implemented through a computer does not save it from invalidation. Indeed, all of the process patents invalidated in *Benson*, *Flook*, *Bilski*, and [*CLS Bank v.*] *Alice* were implemented by a computer.").

**Defendants' MSJ of Invalidity Pursuant to 35 U.S.C. § 101—Page 20**

ent to access those tasks, and a set of rules that are applied to that task on a given event," none of which "provide sufficient additional features or limit the abstract concept in a meaningful way." *Id*. at 1345.

Like the patents found wanting in the cases just above, the '516 Patent claims recite nothing more specific than a "computer," a "user interface" (for viewing/displaying information), and "databases" (for storing information).  Because these terms add nothing more than a generic computer and some components that are present in virtually every computer, they fail to provide "meaningful" limits or "enough" of significance to go beyond the abstract concept and mental process.

To show how DietGoal's claims fail to go beyond the abstract, it is also helpful to compare them to the cases in which the Federal Circuit has found challenged claims to be sufficiently inventive and concrete.  The Federal Circuit cases finding claims to pass the § 101 threshold have been ones that recite specific machines or complex algorithms in the claims.  For example, in *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F .3d 1319 (Fed. Cir. 2010), the Federal Circuit upheld the patentability of claims drawn to an improved GPS process where the claims required calculating an "absolute position" and using "[p]seudoranges, which are distances or estimated distances between satellites and a GPS receiver[.]"  *Id*. at 1332.  As the Court explained, "[i]t is clear that the methods at issue could not be performed without the use of a GPS receiver."  *Id*.  The claimed methods therefore were actually performed by a particular machine—a GPS receiver, not a conventional computer—in a previously unknown way.  Likewise, in *Research Corp. Technologies v. Microsoft Corp.*, 627 F.3d 859, 868 (Fed. Cir. 2010), the court found that the method "required the manipulation of computer data structures (*e.g.*, the pixels of a digital image and a two-dimensional array known as a mask) and the output of a modified

**Defendants' MSJ of Invalidity Pursuant to 35 U.S.C. § 101—Page** 21

computer data structure (a halftoned digital image)." *CyberSource*, 654 F.3d at 1376 (describing the holding of *Research Corp.*).  These cases have no applicability to the '516 Patent claims, which do not recite any specific machine such as a GPS receiver but instead merely claim a general purpose computer, and do not include complex calculations and algorithms that a human could not perform.  Instead, the '516 Patent claims basic meal planning processes that are in fact performed by people every day without a computer.

### 2.    The Dependent Claims Do Not Add Significant Patentable Subject Matter

The dependent claims of the '516 Patent likewise fail to go beyond the abstract idea of meal planning set forth in independent claims 1, 2, 12, and 13.  In particular, each of the dependent claims is equally unpatentable for one or more of the following reasons.

*Abstract Concept*:  Many of the dependent claims simply recite additional steps that could be performed in the user's mind.   For example, claims 3 and 14, just like claims 2 and 13, involve changing the contents of a meal and viewing the resulting "impact on customized eating goals."  Claim 4 provides the unremarkable concept that the meal planning is designed to impact eating behavior.  Claims 5 indicates that the "food objects" chosen to make a meal include "images."  Claims 7, 8, 10, 15, 17, 19-22, 27-28, 43-47, and 52-53 involve collecting, analyzing, and saving information about users' preferences and tendencies (including likes, dislikes, ratings, comments, etc.).  Claims 9, 11, 16, and 18 involve comparing information to "a set of goals."   Claim 41 involves searching for a meal, and claim 42 recites "computing" nutritional information for the meal.

Each of these additional elements can be completed entirely in the human mind or on paper.  Indeed, reciting a user's "tendencies" and "preferences" underscore that these

**Defendants' MSJ of Invalidity Pursuant to 35 U.S.C. § 101—Page** 22

represent nothing more than steps that could be performed in the user's mind.  Because the limitations of these dependent claims can be performed mentally or on paper, just like the steps of the independent claims, each fails to transform the claim into something patentable under § 101.  *See CyberSource*, 654 F.3d at 1373; *SmartGene*, 2014 WL 259824, at *4; *see, e.g., Lumen View*, 2013 WL 6164341, at *13 (finding that the dependent claims were equally ineligible because they merely recited additional abstract ideas).

**Generic Computer Steps**:  Other elements of the dependent claims simply recite generic computer terminology, such as inputting, collecting, storing, and displaying information.  For example, claims 19, 23, 44, and 48 involve receiving "commands" and "selections" from the user about his or her preferences.  Claim 43 involves receiving comments from a user about a meal.  These are simply generic descriptions of inputs provided by a user on a general purpose computer.  Claims 22-23, 27-28, 47-48, and 52-53 add the generic computer concept of saving or storing information in memory or a database.  Claims 20-21, 24-26, 29-40, 45-46, 49-51, 54-61 involve simply "displaying" various information about nutrition, food, and meals.  Claim 41 recites a "search function" for searching and claim 42 recites a "compute function" for computing nutritional information about a meal; to the extent that these two claims disclose a computer as opposed to the human mind, they refer to concepts existing in virtually all computers.

As discussed in Section 1 above, merely converting mental processes and abstract concepts to a general purpose computer and its generic components is plainly insufficient under § 101.  These dependent elements simply recite "physical components for input, memory, look-up, comparison, and output" of "existing computers long in use," not "new machinery."  *See SmartGene*, 2014 WL 259824, at *4; *see also Accenture*, 728 F.3d at 1345; *Lumen View*, 2013 WL 6164341, at *2-3, 13 (finding that addition of a "remote

**Defendants' MSJ of Invalidity Pursuant to 35 U.S.C. § 101—Page** 23

server" and "network connection" to dependent claims was a "quintessentially common-place idea," failed to tie the claim to a "specific machine," and was just as unpatentable as the independent claim).

**Insignificant Pre-Solution and Post-Solution Activity**:  Finally, most of the dependent claims can be found wanting for the additional reason that they add at most insignificant "pre-solution" or "post-solution" activity.  This principle first arose in *Parker v. Flook,* 437 U.S. 584 (1978).  There, the Supreme Court found that a method for updating alarm limits during a catalytic conversion process in the oil-refining industry was unpatentable under § 101.  In so finding, the Court expressly rejected the argument that the post-solution step of adjusting the alarm limit imparted patent eligibility on what was otherwise an unpatentable method claim on a mathematical concept.  *Id*. at 590.  Since then, the Supreme Court has expanded the principle to mean activity both before and after the abstract process at issue.  *See Mayo*, 132 S. Ct. at 1297-98, 1300-01 (noting that both "pre-solution" and "post-solution" activity cannot impart patentability to an otherwise ineligible claim).  Thus, the Federal Circuit has explained that a claim is not meaningfully limited "if it contains only insignificant or token pre- or post-solution activity—such as identifying a relevant audience, a category of use, field of use, or technological environment."  *Ultramercial*, 722 F.3d at 134.  Similarly, data gathering or input steps that lead to the abstract process are "pre-solution" activity that cannot save a claim under § 101:  "Even if some physical steps are required to obtain information from the database (e.g., entering a query via a keyboard, clicking a mouse), such data-gathering steps cannot alone confer patentability."  *CyberSource*, 654 F.3d at 1372 (citing *In re Grams*, 888 F.2d 835, 840 (Fed. Cir. 1989)).  Further, displaying information on a computer is insignificant post-solution activity.  *See, e.g., Clear with Computers*, Case No. 6:12-cv-675-

**Defendants' MSJ of Invalidity Pursuant to 35 U.S.C. § 101—Page** 24

LED, D.I. 1337, slip op. at 12-13 ("presenting a list via a user interface, or through the internet, is a token post-solution activity that does not meaningfully limit the abstract idea of inventory-based selling").

Here, the abstract concept (*i.e.*, the "solution") is choosing a meal to meet eating goals. In addition to being insufficient for the reasons described above, most of the dependent claims are also unpatentable because they involve insignificant and conventional pre-solution and post-solution activity surrounding the meal planning process. For example, claims 19, 23, 43-44, and 48 all involve pre-solution data-gathering steps (receiving "commands," "selections," comments," *etc.*, from the user), which the Federal Circuit has expressly confirmed are not sufficient for patentability. *CyberSource*, 654 F.3d at 1372. Claim 41 involves searching for food to make a meal, also a token pre-solution activity before creating a meal to meet eating goals. Likewise, claims 22-23, 27-28, 47-48, and 52-53 involve the insignificant post-solution task of simply saving information in memory or a database. Likewise, claims 20-21, 24-26, 29-40, 45-46, 49-51, 54-61 involve simply "displaying" various information about nutrition, food, and meals, which is also just conventional post-solution activity after choosing food to make a meal. All of these claims use conventional general purpose computer technology to gather, store, and display information. Such token extra-solution steps cannot magically transform the abstract idea of the '516 Patent into something that meets § 101.

In sum, the '516 Patent's claims attempt to preempt the whole concept of planning a meal by choosing menu items to meet one's eating goals. Nothing in the independent or dependent claims transforms them beyond these fundamental, abstract, and mental steps. At most, the claims add references to a generic computer, additional steps that could be performed in the mind, and insignificant extra-solution activity such as data

**Defendants' MSJ of Invalidity Pursuant to 35 U.S.C. § 101—Page** 25

gathering, storing, and storing, none of which is capable of saving the claims under pre-vailing case law.  As such, the claims fail to pass § 101's important test designed to ensure that the public retain access to the "storehouse of knowledge of all men ... free to all men and reserved exclusively to none." *Bilski II*, 130 S. Ct. at 3221 (quotations omitted).

## VI.    CONCLUSION

The Supreme Court and Federal Circuit in the past four years have severely cracked down on the scourge of patents that take an abstract concept and merely "computerize it."  The '516 Patent is one such example, allowing people to do what they could already do, and have been doing, in their heads or with a pen and paper.  It "add[s] nothing specific to the [abstract concept] other than what is well-understood, routine, conventional activity, previously engaged in by those" monitoring and evaluating their own diets.  *Mayo*, 132 S. Ct. at 1299.  While the Patent Office, operating at the time under the now-eliminated pre-*Bilski* examination guidelines, may have allowed the '516 Patent to issue, the decisions of *Bilski* and its progeny have established that the courts now bear the burden of eradicating such wrongly issued patents when they are asserted and can do so on summary judgment early in the case.  The public must be free to use these abstract concepts—both alone and on a computer—and any patents that claim otherwise should be stricken under § 101.

Dated: May 23, 2014                         Respectfully submitted,

                                            **FISH & RICHARDSON P.C.**


                                            By:  */s/ Neil J. McNabnay*
                                                 Thomas M. Melsheimer
                                                 txm@fr.com
                                                 Texas Bar No. 13922550
                                                 Neil J. McNabnay
                                                 mcnabnay@fr.com
                                                 Texas Bar No. 24002583
                                                 Thomas B. Walsh IV
                                                 walsh@fr.com
                                                 Texas Bar No. 00785173
                                                 Chad B. Walker
                                                 cbwalker@fr.com
                                                 Texas Bar No. 240546484
                                                 1717 Main Street, Suite 5000
                                                 Dallas, TX  75201
                                                 (214) 747-5070 - Telephone
                                                 (214) 747-2091 – Facsimile

                                                 Jennifer N. Scarpati
                                                 scarpati@fr.com
                                                 Katherine H. Reardon
                                                 reardon@fr.com
                                                 FISH & RICHARDSON P.C.
                                                 601 Lexington Avenue - 52nd Floor
                                                 New York, NY  10022-4611
                                                 Telephone: (212) 641-2257
                                                 Facsimile: (212) 258-2291

                                            **Counsel for Defendants**
                                            **DOCTOR'S ASSOCIATES, INC. d/b/a**
                                            **SUBWAY, RED ROBIN INTERNATION-**
                                            **AL, INC., CHIPOTLE MEXICAN GRILL,**
                                            **INC.**

**Defendants' MSJ of Invalidity Pursuant to 35 U.S.C. § 101—Page** 27

R. William Beard, Jr.
State Bar No. 00793318
wbeard@kslaw.com
Truman H. Fenton
State Bar No. 24059742
tfenton@kslaw.com
KING & SPALDING LLP
401 Congress Avenue, Suite 3200
Austin, Texas 78701
Telephone: (512) 457- 2026
Fax: (512) 457-2100

**ATTORNEYS FOR TYSON FOODS, INC.**

Kevin L. Daffer
State Bar No. 05307300
kdaffer@dmtechlaw.com
Jeff A. McDaniel
State Bar No. 13518020
jmcdaniel@dmtechlaw.com
Meredith J. Fitzpatrick
State Bar No. 24059753
mfitzpatrick@dmtechlaw.com
DAFFER MCDANIEL LLP
901 S. MoPac Expressway
Building III, Suite 310
Austin, Texas 78746
Telephone: (512) 476-1400
Fax: (512) 703-1250

**ATTORNEYS FOR WHATABURGER-
RESTAURANTS, LLC**

**Defendants' MSJ of Invalidity Pursuant to 35 U.S.C. § 101—Page** 28

Marcus T. Hall
555 Mission Street, Suite 3400
San Francisco, California 94105
Telephone: (415) 814-6161
Facsimile: (415) 814-6165
marcus.hall@novakdruce.com
Greg Novak (Lead Counsel)
Texas State Bar No. 15119600
1000 Louisiana St.
Fifty-Third Floor
Houston, TX 77002
Telephone: (713) 571-3400
Facsimile: (713) 456-2836
greg.novak@novakdruce.com
Henry A. Petri
Texas State Bar No. 15850600
300 New Jersey Ave, N.W. Fifth Floor
Washington, D.C. 20001
Telephone: (202) 659-0100
Facsimile: (201) 659-0105
hank.petri@novakdruce.com

**ATTORNEYS FOR DEFENDANT**
**MARCO'S FRANCHISING, LLC**

M. Scott Fuller
Texas Bar No. 24036607
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776
Telephone: (214) 740-8000
Facsimile: (214) 740-8800
E-mail: sfuller@lockelord.com

**ATTORNEY FOR DEFENDANT**
**GENGHIS GRILL FRANCHISE CON-**
**CEPTS, L.P.**

**Defendants' MSJ of Invalidity Pursuant to 35 U.S.C. § 101—Page** 29

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on May 23, 2014 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/Jennifer N. Scarpati*
Jennifer N. Scarpati

**Defendants' MSJ of Invalidity Pursuant to 35 U.S.C. § 101—Page** 30