IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DIETGOAL INNOVATIONS LLC, | § | |
| | § | |
| *Plaintiff,* | § | CIVIL ACTION NO. |
| | § | |
| v. | § | 2:12-cv-00764-WCB-RSP |
| | § | (LEAD CASE) |
| CHIPOTLE MEXICAN GRILL, INC., | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, DietGoal Innovations LLC, sued a number of companies in the food service business, accusing them of infringing DietGoal's U.S. Patent No. 6,585,516 ("the '516 patent"). The parties conducted discovery and filed motions for summary judgment. This Court stayed further proceedings pending the briefing and resolution of the motions for summary judgment. One of the motions for summary judgment, filed on behalf of all of the remaining defendants in this case, Dkt. No. 41, was a motion for summary judgment that the '516 patent is invalid under 35 U.S.C. § 101 because it is directed to unpatentable subject matter. The Court GRANTS that motion and enters summary judgment in favor of the defendants based on the collateral estoppel effect of the decision of another district court.

### I. Background

The patent at issue in this case, U.S. Patent No. 6,585,516 ("the '516 patent"), is entitled "Method and System For Computerized Visual Behavior Analysis, Training, and Planning."

Although the patent's title is broad, all of its claims relate to systems and methods for computerized meal planning.  Asserted claim 1 recites as follows:

> 1.  A system of computerized meal planning, comprising:
>     a User Interface;
>     a Database of food objects organizable into meals; and
> at least one Picture Menus [sic], which displays on the User Interface meals from the Database that a user can select from to meet customized eating goal [sic].

The remaining asserted claims are the following:

Claim 2 substitutes a "Meal Builder" for the "Picture Menus" and allows the user to "change content of said meals and view the resulting change content [sic] of said meals and view the resulting meals' impact on customized eating goals."

Claim 3 depends from claim 1 and further comprises "a Meal Builder, which displays on the User Interface meals from the Database, corresponding to the Picture Menus, where the user can change the content of said meal's [sic] and view the resulting meal's impact on customized eating goals."

Claim 6 depends from claim 1 and recites that the Database further comprises "a Food Database comprising the food objects incorporated into the Meal Builder; and a Meal Database comprising various combinations of the food objects designated as meals and incorporated into the Meal Builder and the Picture Menus."

Claim 12 recites a method of computerized planning that can influence behavior, comprising "preparing a Database of food objects; allowing a user to choose meals from one or more Picture Menus, which display on a User Interface meals comprised from the food objects from the Database that the user can mix and match to meet customized eating goals, for a particular amount of time, and allowing a user to save the meals."

2

Claim 13 is similar to claim 12 except that it recites the additional limitations of "allowing the user to decide whether or not to change one or more meals comprising food objects; and if the user decides to change one or more of the meals, allowing the user to change the meals using a Meal Builder, which displays on the User Interface the food objects from the meals from the Database, corresponding to the Picture Menus, where the user can change and view the meals' impact on customized eating goals."

Claim 14 depends from claim 12 and further comprises the two additional limitations from claim 13.

Claim 24 depends from claim 1 and adds "wherein the one or more displayed meals correspond to at least one of a selected nutritional value, a selected caloric value, a selected personal characteristic, and a selected activity feel."

Claim 29 depends from claim 1 and adds "wherein the User Interface displays at least one customized eating goal for selection by the user."

Claim 30 depends from claim 29 and adds "wherein a meal is added to or removed from display on the User Interface in response to selection of one or more of the at least one customized eating goals."

Claim 33 depends from claim 1 and adds "wherein the User Interface displays a control for selecting a food object to include in or remove from a meal."

Claim 36 depends from claim 1 and adds "wherein the User Interface displays a list of food objects associated with the meals in the Database."

Claim 41 depends from claim 2 and adds "wherein the Meal Builder provides a search function allowing the user to search for a meal containing a food object.

3

Claim 49 depends from claim 2 and adds "wherein the one or more displayed meals correspond to at least one of a selected nutritional value, a selected caloric value, a selected personal characteristic, and a selected activity level."

Claim 58 depends from claim 2 and adds "wherein the User Interface displays a control for selecting a food object to include in or remove from a meal."

Claim 59 depends from claim 2 and adds "wherein the User Interface displays revised nutrition information for the meal when the food object is selected for inclusion in or removal from the meal."

Claim 61 depends from claim 2 and adds "wherein the User Interface displays a list of food objects associated with the meals in the Database."

The invention recited in claim 1 is a computerized system that has a user interface (e.g., a display screen) and contains (1) a database of food objects that can be organized into meals and (2) one or more picture menus that display meals from the database from which a user can select to meet a customized eating goal.  At its most basic level, that claim would be satisfied by a computer screen that could display either a hamburger or a chicken sandwich from which the customer could select in order to satisfy a customized eating goal.  The term "customized eating goals" has been construed to mean "computer implemented, user-specific dietary objectives."

## II.  The <u>Bravo</u> Decision

Litigation over the '516 patent has been pending in several district courts.  One of the cases, <u>DietGoal Innovations LLC v. Bravo Media LLC</u>, 13 Civ. 8391 (PAE), was recently before the United States District Court for the Southern District of New York.  On July 8, 2014, the district court in that case entered an order granting summary judgment against DietGoal on the

ground that the asserted claims of the '516 patent are drawn to patent-ineligible subject matter. DietGoal Innovations LLC v. Bravo Media LLC, 2014 WL 3582914 (S.D.N.Y. July 8, 2014). DietGoal has advised the Court that it intends to take an appeal from that decision.

Following the decision in the Bravo case, this Court requested briefing from the parties on the question whether the decision in that case should be given collateral estoppel effect in the cases pending before the Court in this district.  The defendants argued that the cases are indistinguishable, as applied to the issue of ineligible subject matter.  The plaintiff argued that the Court should not grant judgment for the defendants based on collateral estoppel, but should stay this case pending the disposition of the appeal in the Bravo case.

### III.  Principles of Collateral Estoppel

The principles of collateral estoppel, or issue preclusion, are well established and are not in dispute between the parties.  Collateral estoppel applies if (1) the issue sought to be precluded from relitigation is identical to the issue decided in the earlier proceeding; (2) the issue was actually litigated in the former proceeding; (3) the determination on the issue in the prior action was necessary to the resulting judgment in that case; and (4) the person against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action. Mayer/Berkshire Corp. v. Berkshire Fashions, Inc., 424 F.3d 1229, 1232 (Fed. Cir. 2005); Dana v. E.S. Originals, Inc., 342 F.3d 1320, 1323 (Fed. Cir. 2003); Hicks v. Quaker Oats Co., 662 F.2d 1158, 1166 (5th Cir. 1981); see Montana v. United States, 440 U.S. 147, 153 (1979) ("Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different

cause of action involving a party to the prior litigation."); <u>Restatement (Second) of Judgments</u> § 27 (1980).

Importantly, the collateral estoppel effect of a prior district court decision is not affected by the fact that an appeal has been taken from the decision.  <u>See</u> <u>Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.</u>, 170 F.3d 1373, 1380-81 (Fed. Cir. 1999);  <u>Rice v. Dep't of the Treasury</u>, 998 F.2d 997, 999 (Fed. Cir. 1993);  <u>SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n</u>, 718 F.2d 365, 370 (Fed. Cir. 1983); <u>Prager v. El Paso Nat'l Bank</u>, 417 F.2d 1111, 1112 (5th Cir. 1969).

## IV.  Application of Collateral Estoppel Principles to This Case

In its brief, DietGoal does not argue that the issue of unpatentability differs between this case and the <u>Bravo</u> case.  Nor does DietGoal contend that unpatentability was not actually litigated in the <u>Bravo</u> case or that the <u>Bravo</u> court's determination of that issue was not necessary to the court's judgment in that case.  Instead, DietGoal argues that it was denied a full and fair opportunity to litigate the issue of unpatentable subject matter in the <u>Bravo</u> case and that the <u>Bravo</u> decision should not be given collateral estoppel effect for that reason.

In making that argument, DietGoal does not contend that the <u>Bravo</u> district court refused to consider DietGoal's arguments or committed a serious procedural breach that deprived DietGoal of an opportunity to be heard on the section 101 issue.  Instead, DietGoal relies on a passage from the Supreme Court's decision in <u>Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.</u>, 402 U.S. 313 (1971).  There, the Supreme Court noted that in patent cases principles of collateral estoppel would not extend to "those relatively rare instances where the courts wholly failed to grasp the technical subject matter and issues in suit."  <u>Id.</u> at 333.  DietGoal contends that

this is one of those "rare instances," in that the district judge in the <u>Bravo</u> case "failed to grasp the technical subject matter and issues in suit."

In support of that contention, DietGoal first notes that the district court did not conduct a claim construction.  Quoting from the Federal Circuit's decision in <u>Bancorp Servs. L.L.C. v. Sun Life Assur. Co.</u>, 687 F.3d 1266, 1273 (Fed. Cir. 2012), the district court stated that "claim construction 'is not an inviolable prerequisite to a validity determination under § 101.'" <u>Bravo</u>, 2014 WL 3582914, at *15, and found that claim construction was unnecessary in the case before it because the claims were "sufficiently 'straightforward' that formal claim construction is not necessary to understand their content." <u>Id.</u>  The court added that the claims of the '516 patent would be invalid "under any reasonable construction," and that claim construction "would not assist the Court in resolving the § 101 claim of invalidity." <u>Id.</u>  Finally, the court observed that even under the claim construction urged by DietGoal—the one adopted in the instant case—"the subject matter claimed in the '516 patent is still impermissibly abstract," <u>id.</u>, and that adopting the claim constructions proposed by DietGoal in its Joint Claim Construction submission would not alter the court's invalidity analysis, <u>id.</u> at *16.  The district court's discussion of the claim construction issue thus makes clear that the court was fully aware that in certain cases claim construction can have a bearing on the analysis of invalidity under section 101.  This case, the court concluded, was not one of them.

While DietGoal is critical of the <u>Bravo</u> court for not conducting its own claim construction before granting summary judgment of invalidity under section 101, DietGoal has not pointed out with specificity how any disputed claim construction issue would have affected

the district court's invalidity analysis.  The claim construction argument therefore provides no basis for refusing to accord collateral estoppel effect to the <u>Bravo</u> court's decision.

DietGoal next sets forth a series of criticisms of the district court's analysis of the '516 patent.  First, DietGoal takes the district court to task for not addressing the patent on a claim-by-claim basis.  According to DietGoal, that resulted "in the court failing to address several distinct limitations in numerous dependent claims."  It is clear, however, that the district court was fully aware of the multiple claims being asserted under the '516 patent; the court simply did not agree with DietGoal that the dependent claims contained limitations that rescued them from invalidity under section 101.  Besides quoting the principal system claims (claims 1 and 2) and the principal method claims (claims 12 and 13), the district court specifically adverted to the dependent claims at several points.  The court held that the system claims, including the dependent claims, "recite nothing more than 'a handful of generic computer components configured to implement the same [abstract] idea,'" <u>Bravo</u>, 2014 WL 3582914, at *15, and were therefore invalid.  The court likewise held that the method claims were invalid for reciting a patent-ineligible abstract idea or mental process.  <u>Id.</u> at *14.

Second, DietGoal points to the district court's statement that "the '516 Patent claims a process for computerized meal planning; in essence, it recites a computer program that allows the user to create meals from a data base of food objects according to his or her preferences and dietary goals, to change those meals by adding or subtracting food objects, and to view the dietary impact of changes to those meals on a visual display."  <u>Bravo</u>, 2014 WL 3582914, at *10.  That description, DietGoal complains, "ignores the 'Picture Menus' limitation of the '516 Patent."  The claims of the '516 patent, according to DietGoal, "do not merely require the user to

8

'create meals from a database of food objects according to his or her preferences and dietary goals,' as the Bravo court stated, but "require that the user be able to select a meal from the Picture Menus, which displays meals from the Database and, using a Meal Builder, change the content of meals and view the resulting meals' impact on the user's customized eating goals." Dkt. No. 93, at 3.

DietGoal's criticism falls short because the district court made clear that its description of the scope of the claims was not intended to include every limitation, but was a characterization of what the claims recite "in essence."  Courts frequently summarize the subject matter of patent claims without including a reference to every limitation.  It cannot be inferred from the district court's brief summary of the subject matter of the patent that the court did not understand the various limitations in the claims, particularly in light of the court's quotation of the full text of the independent claims and its more detailed description of the claims at other points in the opinion, see Bravo, 2014 WL 3582914, at *10, *11, *13, *14-*15.  As for the "Picture Menus" limitation, the district court understood that the claims required that the user be able to "view the dietary impact of changes to [the] meals as a visual display."  Id. at *10.  That is a fair characterization of the "Picture Menus" limitation, which requires that the user interface display meals "from the Database that a user can select from to meet customized eating goal [sic]."

DietGoal further criticizes the Bravo court for characterizing the '516 patent as reciting "nothing more than the abstract concept of selecting meals for the day, according to one's particular dietary goals and food preferences."  DietGoal argues that the court's summary is inaccurate, in that the claims do not recite "selecting meals for the day" or doing so "according to

one's particular dietary goals and food preferences." Dkt. No. 93, at 3.  DietGoal also criticizes

the district court's statement that

> the '516 Patent claims a computerized method of selecting meals that align with
> the user's individual preferences and nutritional goals (for example, by planning
> out dinners for the week that accord with a low-calorie diet) and calculating the
> dietary impact of the addition or subtraction of certain foods (for example, by
> determining how many calories you will save by swapping out French fries for
> broccoli).  These are conventional and quotidian tasks.  A person can perform
> them without the aid of any particular or structured method and without the need
> of any technology.

Bravo, 2014 WL 3582914, at *10.

DietGoal objects that the phrases used by the district court to describe the patent are not

found in the claims and that the district court cites no evidence in support of its observation that

meal planning of the sort recited in the patent is a "conventional and quotidian task[]."  Those

objections again reflect DietGoal's unhappiness with the district court's choice of language to

summarize the general subject matter of the claims.  The district court's statements, however, did

not purport to describe the patent claims limitation by limitation.  Contrary to DietGoal's

contention, the court's selection of language to describe the general nature of the claims does not

reveal a fundamental misunderstanding on the district court's part of the claims of the '516

patent.

The next point on which DietGoal takes issue with the district court is the district court's

conclusion that, although computer-implemented, the claims could be performed in the human

mind or by a human using a pen and paper.  DietGoal points to several claim limitations that, in

its view, cannot be performed in the human mind or with pen and paper, including the Picture

Menus limitation in claim 1 and the limitations in other claims requiring interaction between the

user and the display on the user interface.  Relatedly, DietGoal charges that the Bravo court's

"complete failure to comprehend the meaning and scope of the claims of the '516 Patent," Dkt. No. 93, at 5, is illustrated by the court's statement that the Picture Menus limitation "is nothing more than 'post-solution activity that cannot render the process patentable." <u>Bravo</u>, 2014 WL 3582914, at *14.

DietGoal's criticisms of the district court's decision fall far short of showing that the court "wholly failed to grasp the technical subject matter and issues in suit." <u>Blonder-Tongue</u>, 402 U.S. at 333. The concern expressed by the Supreme Court in <u>Blonder-Tongue</u> was with the highly technical subject matter of some patents that might leave lay judges incapable of understanding the technology. The '516 patent does not present any such challenges; instead, it is a very simple and straightforward patent that uses commonplace language and concepts, as the <u>Bravo</u> court noted.

Even if the statements by the district court reflect an incorrect legal analysis of the '516 patent, the statements pointed to by DietGoal are not sufficient to defeat the application of principles of collateral estoppel in this case. DietGoal's argument, at bottom, is that the district court's decision in the <u>Bravo</u> case was wrong. For example, DietGoal's criticism of the district court's characterization of the "Picture Menus" limitation as "post-solution activity" is simply a disagreement with the district court's analysis; it does not reflect a failure "to grasp the technical subject matter and the issues in suit."

The Supreme Court made clear in <u>Blonder-Tongue</u> that the exception to the application of collateral estoppel based on a lack of understanding of the technology by a district court is a narrow one that will rarely be encountered. The Federal Circuit has emphasized just how narrow that category is. In particular, it does not extend to cases in which the essence of the patentee's

objection is simply that the court's analysis of the patent and the issues of invalidity or infringement were erroneous.  See Pharmacia & Upjohn Co. v. Mylan Pharm., Inc., 170 F.3d 1373, 1380 (Fed. Cir. 1999) (the inquiry into whether the plaintiff was afforded a full opportunity to litigate is "quite narrow" and does not consider "whether the prior finding of invalidity was correct"); Mississippi Chem. Corp. v. Swift Agric. Chems. Corp., 717 F.2d 1374, 1378-79 (Fed. Cir. 1983); Stevenson v. Sears, Roebuck & Co., 713 F.2d 705, 709 (Fed. Cir. 1983) ("[A]n inappropriate inquiry is whether the prior finding of invalidity was correct; instead, the court is only to decide whether the patentee had a full and fair opportunity to litigate the validity of his patent in the prior unsuccessful suit."); Westwood Chem., Inc. v. United States, 525 F.2d 1367, 1375 (Ct. Cl. 1975) ("[T]he correctness of the earlier decision is not an issue and is not a prerequisite to the application of [collateral] estoppel.").  DietGoal does not argue that the Bravo decision is distinguishable from this case or that the claims asserted in this case would not be covered by ruling of the district court in the Bravo case.  Nor has DietGoal pointed to any procedural flaw in the proceedings before the district court in the Bravo case that would justify denying collateral estoppel effect to the judgment in that case.

## V.  Disposition

DietGoal argues that instead of granting judgment for the defendants based on collateral estoppel, the Court should stay this case pending the disposition of the appeal in the Bravo case. DietGoal points out that if the district court's decision in Bravo is reversed, the Court could simply vacate the stay in this case, deny the section 101 motion, and resume work on the case. Of course, the same scenario would likely play out if the Court granted judgment in this case based on collateral estoppel:  If DietGoal chose to appeal in this case, and the Bravo case were

reversed by the Federal Circuit, the predicate for the Court's collateral estoppel ruling would disappear and this Court's judgment would presumably be reversed.

There is one difference, however, between a stay and a grant of judgment based on collateral estoppel:  If this Court grants judgment based on collateral estoppel and DietGoal appeals, the defendants would have the right to argue to the Federal Circuit that the decision in this case should be affirmed even if the circuit court reverses the decision in Bravo.  While the collateral estoppel basis for the judgment would not survive a reversal in Bravo, the defendants might choose to defend the judgment in their favor not only based on collateral estoppel, but on the merits as well.  In so doing, they might elect to make arguments different from those made by the defendant in the Bravo case, without the potential obstacle of a prior circuit court decision on the section 101 issue.  If this Court were to stay the proceedings in this case pending the appeal in Bravo, the defendants would not have that opportunity.  Instead, the defendants would be involuntary spectators to the Bravo appeal with, at best, limited participation as amicus curiae. The Court is not disposed to deprive the defendants of the opportunity to argue the merits of their preferred arguments as to the section 101 issue to the Federal Circuit, rather than relying entirely on the defendant in the Bravo case to make those arguments for them.

There is another consideration in play here as well.  This case has been pending for nearly two years.  There has been a court-initiated stay in place for the last several months. There is an interest in bringing litigation to a close when the law permits that result.  Here, although the judgment will be subject to a condition subsequent depending on the disposition of the Bravo case on appeal, the Court is persuaded that the defendants are legally entitled to have

their motion for summary judgment granted, and that the better course is to grant the motion at this point and let events in the <u>Bravo</u> case take their course.

Because the ruling on the section 101 issue invalidates all of the claims asserted against all of the defendants, it obviates the need for the Court to address the remaining summary judgment motions, which are found at Case No. 2:12-cv-764, Dkt. Nos. 36, 38, 41, 42, 43, 44, 45, 46, 47, 49, 50, 55, 56, and 84; and Case No. 2:12-cv-761, Dkt. No. 418.  The clerk is directed to terminate all of those motions, which are not necessary for the Court to resolve in light of the Court's ruling on the section 101 issue.

The only remaining matter before the Court at this time is the motion by defendants Doctor's Associates, Inc., d/b/a/ Subway, Red Robin International, Inc., and Chipotle Mexican Grill, Inc., for sanctions pursuant to Fed. R. Civ. P. 11, Case No. 2:12-cv-761, Dkt. No. 393. The Court will address that motion in due course.

The stay previously imposed by the Court in this case is lifted.

IT IS SO ORDERED.

SIGNED this 3d day of October, 2014.


WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE

14