IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DIETGOAL INNOVATIONS LLC, | § § | |
| *Plaintiff,* | § § | CIVIL ACTION NO. |
| v. | § § | 2:12-cv-00764-WCB |
| CHIPOTLE MEXICAN GRILL, INC., | § § § | |
| *Defendant.* | § § | |

| | | |
|---|---|---|
| DIETGOAL INNOVATIONS LLC, | § § | |
| *Plaintiff,* | § § | CIVIL ACTION NO. |
| v. | § § | 2:12-cv-00338-WCB |
| TYSON FOODS, INC., | § § § | |
| *Defendant.* | § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is a motion by defendant Tyson Foods, Inc., for sanctions under Rule 11 of the Federal Rules of Civil Procedure. Dkt. No. 100. The motion is DENIED.

**I. Timeliness**

As an initial matter, DietGoal argues that Tyson's motion is untimely because it was filed long after the conduct that is the subject of the motion. DietGoal points out that Tyson's motion asserts that DietGoal's "Infringement Contentions have been objectively baseless since it filed its Complaint." Dkt. No. 100, at 1; see also id. at 4 ("DietGoal improperly asserted its original

1

infringement contentions . . . ."); id. at 14 ("An award of attorney's fees is appropriate where DietGoal had no objectively reasonable expectation of success in proving infringement even before the Court construed the '516 Patent . . . ."). DietGoal argues that those statements show that Tyson has delayed bringing its Rule 11 motion for at least a year and a half. That delay, DietGoal argues, should bar Tyson's claim for sanctions.

Because the purpose of Rule 11 is "to deter repetition of the [complained of] conduct," Fed. R. Civ. P. 11(c)(4), a Rule 11 motion should be filed "within a time frame that has a nexus to the behavior sought to be deterred." Gen. Motors Acceptance Corp. v. Bates, 954 F.2d 1081, 1086 (5th Cir. 1992), quoting Thomas v. Capital Sec. Servs., Inc., 836 F.2d 866, 881 (5th Cir. 1988); ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 875 (Fed. Cir. 2010) (pointing out that the Advisory Committee's Note to the 1993 amendments to Rule 11 provides that any motion alleging a violation of Rule 11 "should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely.").

As noted by the Advisory Committee, a delay of the type that DietGoal points to might be sufficient to bar the sanctions motion in appropriate circumstances. However, there was no such delay in this case. While it is true that Tyson complained about DietGoal's initial infringement contentions, the focus of its concern, and the subject of its Rule 11 motion, was the filing of DietGoal's final infringement contentions. Those final infringement contentions were not served until after the Court's claim construction.

DietGoal is correct that on October 12, 2012, Tyson first informed DietGoal that it regarded DietGoal's infringement contentions to be baseless. According to DietGoal, however, the parties discussed the issue, and DietGoal "agreed to limit the number of asserted claims and

to provide additional disclosures of DietGoal's infringement theories." Dkt. No. 124 at 3. On November 30, 2012, subsequent to that agreement, DietGoal amended its infringement contentions.

Tyson did not raise its Rule 11 claims again until after DietGoal filed its final infringement contentions, following the entry of the Court's claim construction order. The timing of the events suggests that Tyson's original objections were partially resolved by DietGoal's agreed-upon amendment of its infringement contentions. Tyson's Rule 11 motion supports that interpretation, as it requests attorney's fees "at least from the time that DietGoal served its Final Infringement Contentions." Dkt. No. 100, at 14. Tyson's substantive arguments also support that interpretation, as they turn on the Court's claim construction and DietGoal's final infringement contentions.

To the extent that DietGoal is arguing that Tyson forfeited its right to file a Rule 11 motion regarding DietGoal's final infringement contentions when it objected to DietGoal's initial infringement contentions but did not file a Rule 11 motion at that time, the Court rejects that argument out of hand. The Court regards Tyson's motion as requesting relief for conduct that occurred contemporaneously with and after the filing of the final infringement contentions. And because Tyson's Rule 11 motion was directed at the final infringement contentions, Tyson's delay should be measured from the filing of the offending material. The Court therefore does not find that Tyson impermissibly delayed bringing its Rule 11 motion based on its complaints about DietGoal's initial infringement contentions.

DietGoal raises a second, and more substantial, untimeliness issue. Tyson filed its Rule 11 motion on October 29, 2014. That was 12 days after the Court entered final judgment in

Tyson's favor, on October 17, 2014. The Fifth Circuit has held that a Rule 11 motion is untimely if it is filed after judgment in the case has been entered. See Tompkins v. Cyr, 202 F.3d 770, 788 (5th Cir. 2000) (Rule 11 motion untimely because "the winning defendants did not file their Rule 11 motion until after trial had concluded, thereby denying the Tompkinses a reasonable opportunity to correct their complaint."); Phillips v. Parrish, 31 F. App'x 159 (5th Cir. 2001) ("Because Parrish's motion was not served 21 days prior to filing in the district court as required by Rule 11(c)(1)(A) and was filed after the district court rendered its judgment, the district court abused its discretion in imposing Rule 11 sanctions against Truncelitto."); see also ResQNet.com, 594 F.3d at 875 (noting that "[t]he general practice is that the motion must be filed before the offending contention has been withdrawn or resolved"); Mary Ann Pensiero, Inc. v. Lingle, 847 F.2d 90, 100 (3d Cir. 1988) (Third Circuit adopts a court-made rule requiring Rule 11 motions to be filed before entry of final judgment).[1] Tyson had an ample opportunity to file its Rule 11 motion between the time the Court lifted the stay of proceedings in the case on October 3, 2014, and the time the Court entered final judgment on October 17, 2014. Moreover, the Court's orders entered in the weeks prior to the entry of final judgment made it clear that final judgment would be entered soon, which should have alerted Tyson to the need to file its motion promptly, which it failed to do. Because the Court entered final judgment in this case prior to the date that Tyson filed its Rule 11 motion, the motion is denied on timeliness grounds.[2]

---

[1] Tyson argues that its failure to file its motion prior to final judgment in this case should not matter because DietGoal plans to continue pressing its claims on appeal. That argument is without merit. The Fifth Circuit's rule prohibiting the filing of a Rule 11 motion after the conclusion of the case refers to the termination of proceedings in the district court, not the end of the case, including all appeals. See Tomkins, 202 F.3d at 788.

[2] DietGoal makes another timeliness argument—that Tyson failed to serve its motion on

## II. The Merits of Tyson's Rule 11 Claim

Even if the Court were not to dismiss Tyson's Rule 11 claim based on untimeliness, it would deny the motion on the merits.

Rule 11 provides, in pertinent part, that "[b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b).  Tyson argues that DietGoal's decision to proceed with its infringement contentions following the Court's claim construction violated its Rule 11 obligations.

Under Rule 11, a district court must determine whether the attorney's conduct was reasonable and not frivolous.  "[R]egardless of whether the attorney's view of the law is erroneous, sanctions can be imposed only if his position can 'fairly be said to be unreasonable from the point of view of both existing law and its possible extension, modification, or

---

DietGoal at least 21 days before the entry of judgment, thus violating the 21-day "safe harbor" period of Rule 11(c)(2).  There is no merit to that argument.  Tyson served its Rule 11 motion on DietGoal on March 31, 2014.  The Court then entered a stay of proceedings.  The Court lifted the stay on October 3, 2014.  On October 1, 2014, Tyson served another Rule 11 motion on DietGoal.  That motion was substantively identical to the motion that was served in March 2014; the only change was that the new motion explicitly requested relief against DietGoal's counsel as well as against DietGoal.  That change did not alter the substance of Tyson's complaints regarding the alleged misconduct.  Moreover, because the motion sought sanctions for a violation of Rule 11(b)(2), relief could only be obtained from DietGoal's counsel in any event.  See Rule 11(c)(5)(A); Skidmore Energy, Inc. v. KPMG, 455 F.3d 564, 567 (5th Cir. 2006), the Court regards the 21-day notice period of Rule 11 as having been satisfied by the service of Tyson's motion on March 31, 2014.

reversal.'" FDIC v. Calhoun, 34 F.3d 1291, 1296 (5th Cir. 1994), quoting Smith v. Our Lady of the Lake Hosp., Inc., 960 F.2d 439, 444 (5th Cir. 1992).

Sanctions are normally reserved "for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." SortiumUSA, LLC v. Hunger, 2014 WL 1080765, at *5 (N.D. Tex. Mar. 18, 2014) (citation omitted). The imposition of Rule 11 sanctions "is an extraordinary remedy, one to be exercised with extreme caution." Id. at *3, citing Laughlin v. Perot, 1997 WL 135676, at *8 (N.D. Tex. Mar. 12, 1997). Moreover, the question whether to impose sanctions under Rule 11 is committed to the district court's discretion. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990).

Tyson argues that DietGoal's infringement contentions regarding the "Meal Builder" and "Picture Menus" limitations, which appear either separately or in combination in each independent claim of DietGoal's patent, U.S. Patent No. 6,585,516 ("the '516 patent"), were objectively baseless.

**A. "Picture Menus"**

One of the limitations of claim 1 of the '516 patent requires "at least one Picture Menus, which displays on the User Interface meals from the Database that a user can select from to meet customized eating goal." In its claim construction order, the Court construed the term "Picture Menus" to mean "a visual display of at least one image of a meal that a user can select a meal from." Case No. 2:12-cv-761, Dkt. No. 308, at 29. Tyson argues that DietGoal's claim of infringement as to the "Picture Menus" limitation was objectively baseless.

Tyson argues that DietGoal could not possibly prove infringement, because the pictures of meals displayed on Tyson's website do not correspond to the nutritional information that accompanies the pictures. Tyson's website displays a list of recipes with accompanying photographs of meals associated with each recipe. The collection of recipes can be limited using various nutrition filters (e.g., "Calorie Smart," which applies to items with 600 or fewer calories per serving). DietGoal contends that Tyson's website infringes claim 1 because the website allows a customer to select a meal based on the customer's nutritional preferences. Tyson responds that while the nutritional filters limit the choice of recipes based upon single-serving nutritional information, the pictures often depict more than a single serving of the food item for which nutritional information is supplied.[3]

In the claim construction proceedings, the Court rejected both parties' proposals and adopted its own construction. Case No. 2:12-cv-761, Dkt. No. 308, at 26-29. The Court rejected the defendants' proposed construction for incorrectly importing a usage limitation ("pictures of meals which can be mixed and matched by a user") into the claim. Id. The Court also declined to adopt DietGoal's proposed construction, because the Court found that "[a] proper construction of Picture Menu should give meaning to 'menu' by including the selection concept that Defendants note is in the common meaning of the term." Id. The Court's construction required only "a visual display of at least one image of a meal that a user can select a meal from." Id.

Based on the claim construction, the Court rejects Tyson's argument that "the 'displayed meals' from the alleged Picture Menus cannot be selected by the user . . . because the displayed

---

[3] The example discussed in the briefing is Aegean Grilled Cornish Hen—the recipe for which corresponds to eight servings, while the image corresponds to only two servings. However, Tyson has not gone so far as to claim that none of its recipes correspond to a single serving and have an associated picture that corresponds to a single serving.

meals do not satisfy the limits of the Nutrition filters." Dkt. No. 100, at 13. Tyson's website clearly displays an image of a meal. A user may select only a portion of that meal (e.g., one serving of a particular food item rather than the one or more servings of that item or the undescribed side dishes displayed in the image) as the user's selected meal. That process would appear to satisfy the "Picture Menus" limitation under the Court's construction.

It is not necessary for the Court to decide whether DietGoal's theory of infringement is meritorious. It is sufficient that the Court is persuaded that DietGoal's theory was not wholly frivolous. In the Court's view, Tyson has not shown that DietGoal's theory was plainly contrary to the Court's claim construction. Accordingly, the Court holds that DietGoal did not violate Rule 11 by continuing to press its theory of infringement of the "Picture Menus" claim after the Court issued its claim construction.

B. **"Meal Builder"**

Claim 2 of the '516 patent, like various other claims of the patent, requires a Meal Builder, which displays meals from the Database on the User Interface. Claim 2 further requires that a user be able to change the content of the meals and "view the resulting meals' impact on customized eating goals." In its claim construction order, the Court construed the term "Meal Builder" to mean "a computer program that allows the user to create or change a meal and view the meal's impact on customized eating goals." Case No. 2:12-cv-761, Dkt. No. 308, at 33. Tyson argues that DietGoal's claim of infringement as to the "Meal Builder" limitation, like its claim as to the "Picture Menus" limitation, is objectively baseless.

Tyson's website allows a user to search a variety of recipes using keywords, specific food objects (e.g., chicken or beef), and various nutrition filters. DietGoal argues that Tyson's

8

website satisfies the "Meal Builder" limitation because, in response to a particular query, the website "displays one or more meals that include one or more food objects from the database." Dkt. No. 100-5, at 16. The website allows a user to change the content of the meals by searching for different food objects (e.g., chicken or beef). Id. at 16-17. Tyson objects to DietGoal's contention because when a user changes his selection of food objects, the website runs a new search and presents a different set of recipes; it does not substitute one food object for another. The parties' dispute as to this limitation focuses on whether the Court's claim construction of "Meal Builder" covers the filtering and display system of Tyson's website.

Tyson argues that DietGoal is wrong in asserting that the Tyson website is "a computer program that allows the user to create or change a meal" simply because it allows a user to make different meal selections. Tyson contends that "changing 'recipe selections' is not the same as 'creating or changing a meal.'" According to Tyson, when a user elects to change a component of a meal by, for example, changing "chicken" to "beef," no recipe is created or changed by the website, and no single meal is created or changed. Instead, the "chicken" recipes and meals are no longer displayed, and the "beef" recipes and meals are displayed as the new selection. Tyson adds that the recipes and meals selected by use of the "beef" and "chicken" filters are completely different—they are not identical, with the exception of the substitution of chicken for beef.

The Court is not persuaded by Tyson's characterization of what it means to "create" or "change" a meal. By enabling a user to change the meat component of a meal from beef to chicken and then displaying the chicken-based recipe and meal in place of the beef-based recipe and meal, it seems fair to say that the user has "changed" the meal. At the very least, DietGoal's position on that point is not frivolous.

Tyson also disputes DietGoal's claim that, by refining the search using the various nutritional filters, users are "able to view the resulting meals' impact on the user's customized eating goal by viewing the increased or reduced number and type of resulting meals that still meet the dietary goal reflected by the dietary objective filter(s)." Dkt. No. 100-5, at 17. The various recipes (or "meals," as characterized by DietGoal) that are displayed in response to a query visually indicate that they satisfy a particular nutritional filter, which appears to meet the requirement that the user be able to "view the resulting meals' impact on customized eating goals."

Tyson further argues that its website does not satisfy the requirement that the accused system enable the user to "view the resulting meals' impact on customized eating goals." The Court construed the term "customized eating goals" to mean "computer implemented, user-specific dietary objectives." Tyson contends that there is no such computer-implemented system for identifying dietary objectives in its accused system. Tyson's system, however, allows the user to filter the choices presented to the user based on certain nutritional parameters. While it is something of a stretch to characterize that system as allowing the user to "view the resulting meals' impact on customized eating goals," DietGoal's argument on that issue is not clearly meritless.

In its reply brief, Tyson argues that DietGoal's argument constitutes an attempt to run away from the Court's claim construction. Tyson contends that DietGoal's infringement theory would require the Court to rewrite the claim construction of "Meal Builder" from the singular ("a computer program that allows the user to create or change a meal and view the meal's impact on customized eating goals") to the plural ("a computer program that allows the user to create or

10

change one or more meals and view the meals' impact on customized eating goals"). The Court does not agree that DietGoal's argument depends on any such revision of the claim construction. The claims that refer to the Meal Builder use the singular and plural ("meal" and "meals") interchangeably. <u>See</u> claims 2 (plural), 3 (singular), 13 (plural), 37-38 (singular), 40-43 (singular). The distinction is of no significance in the patent, which clearly contemplates that the Meal Builder would have the capacity to create or change individual meals and to do so repeatedly for numerous meals. To the extent that Tyson is arguing that its system cannot satisfy the "Meal Builder" limitation under the singular usage of "meal" because Tyson substitutes a whole new meal for another meal, rather than making changes in a single meal, Tyson's "singular vs. plural" argument is just another way of contending that its system does not change or create meals, but simply allows users to substitute one meal for another, a contention that the Court has already rejected.

In sum, DietGoal's argument that the Court's claim construction order as to the "Meal Builder" limitation was amenable to an interpretation consistent with its theory of infringement is not wholly frivolous. Accordingly, the Court rejects Tyson's contention that DietGoal's position was so plainly baseless as to violate Rule 11.

The motion for Rule 11 sanctions is DENIED, both on timeliness grounds and on the merits.

IT IS SO ORDERED.

SIGNED this 20th day of March, 2015.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE