IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DIETGOAL INNOVATIONS LLC, § § | | |
| *Plaintiff,* § § | CIVIL ACTION NO. | |
| v. § § | 2:12-cv-00764-WCB | |
| CHIPOTLE MEXICAN GRILL, INC., § § | | |
| *Defendant.* § § | | |

| | | |
|---|---|---|
| DIETGOAL INNOVATIONS LLC, § § | | |
| *Plaintiff,* § § | CIVIL ACTION NO. | |
| v. § § | 2:12-cv-00338-WCB | |
| TYSON FOODS, INC., § § | | |
| *Defendant.* § § | | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Tyson Foods, Inc.'s Motion for Attorney's Fees, Case No. 2:12-cv-00764 Dkt. No. 106. The motion is DENIED.

Section 285 of the Patent Act, 35 U.S.C. § 285, provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." The Supreme Court recently clarified the scope of section 285, holding that an "exceptional" case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was

litigated." Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S. Ct. 1749, 1756 (2014). The Court added that district courts "may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." Id. While no single element is dispositive of the question, "predominant factors to be considered, though not exclusive, are those identified in Brooks Furniture [Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378 (Fed. Cir. 2005)]: bad faith litigation, objectively unreasonable positions, inequitable conduct before the PTO, litigation misconduct, and (in the case of an accused infringer) willful infringement." Stragent, LLC v. Intel Corp., No. 6:11-CV-421, 2014 WL 6756304, at *3 (E.D. Tex. Aug. 6, 2014) (Dyk, J.); see also Octane, 134 S. Ct. at 1756 n.6 ("[I]n determining whether to award fees under a similar provision in the Copyright Act, district courts could consider a 'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'"), quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 535 n.19 (1994). Ultimately, a party's entitlement to attorney fees need only be proved by a preponderance of the evidence. Octane, 134 S. Ct. at 1758.

Tyson argues that this case should be found exceptional under section 285 for multiple reasons. In particular, Tyson accuses DietGoal of maintaining objectively unreasonable litigation positions, committing inequitable conduct before the Patent and Trademark Office ("PTO"), and litigating in bad faith in order to delay resolution of this case.

### I.    **Objectively Unreasonable Positions**

In evaluating whether a party has taken unreasonable litigating positions, it is important to note that the fact that the party's position does not prevail—or would not have prevailed if it

had been litigated to conclusion—is insufficient by itself to warrant an award of fees. See Octane, 134 S. Ct. at 1753 (fees are not "a penalty for failure to win a patent infringement suit," but are appropriate only "in extraordinary circumstances"); IP Innovation L.L.C. v. Red Hat, Inc., No. 2:07–cv–447 (E.D. Tex. Oct. 13, 2010), Dkt. No. 273, at 2. (Rader, J.) ("An award of attorneys' fees . . . must be predicated upon something beyond the fact that a party has prevailed."). Tyson must show that DietGoal's positions (individually or taken as a whole) were frivolous or objectively baseless.

In a related case, DietGoal Innovations LLC v. Bravo Media LLC, 33 F. Supp. 3d 271 (S.D.N.Y. 2014), the United States District Court for the Southern District of New York held that the patent-in-suit in this case was drawn to unpatentable subject matter and therefore held the patent invalid under 35 U.S.C. § 101. Judgment in this case was entered based on the collateral estoppel effect of the decision in the New York case. See Dkt. No. 95. For that reason, this Court made no rulings on the merits of DietGoal's various arguments as to infringement and damages. Nonetheless, Tyson argues that the positions taken by DietGoal on those issues were unreasonable and that by pressing those arguments, DietGoal subjected itself to a fee award under section 285. In particular, Tyson identifies three arguments put forward by DietGoal that it considers to have been objectively unreasonable.

    a. **Picture Menus**

Tyson first challenges as unreasonable DietGoal's contention that Tyson's website satisfies the "Picture Menus" limitation in Claim 1 of the '516 patent. That limitation requires "at least one Picture Menus, which displays on the User Interface meals from the Database that a user can select from to meet customized eating goal." In its claim construction order, the Court

construed the term "Picture Menus" to mean "a visual display of at least one image of a meal that a user can select a meal from." Case No. 2:12-cv-761, Dkt. No. 308, at 29. Tyson argues that DietGoal's claim of infringement as to the "Picture Menus" limitation was objectively baseless.

Tyson contends that its website fails to satisfy the "Picture Menus" limitation for several reasons: it allows users to filter recipes only by "generalized nutritional criteria" rather than by "a set of customized eating goals"; it shows images depicting multiple food portions that do not correspond to the accompanying, single-serving nutritional information; and it does not allow users to "select" the pictured meal. Those arguments are substantively identical to those pressed by Tyson in its Rule 11 motion against DietGoal. Dkt. No. 100. In ruling on that motion, the Court has found that DietGoal's positions were not wholly frivolous in light of the Court's claim construction. The Court reaches the same conclusion here, and for the same reasons. Without deciding whether DietGoal's position as to the "Picture Menus" limitation would have been successful if it had been tested either on summary judgment or at trial, the Court is satisfied that it is not objectively baseless.

### b. Meal Builder

Tyson's next argument focuses on DietGoal's contention that Tyson's website satisfies the "Meal Builder" limitation. Claim 2 of the '516 patent requires a "Meal Builder," which displays meals from the database on the user interface. Claim 2 further requires that a user be able to change the content of the meals and "view the resulting meals' impact on customized eating goals." In its claim construction order, the Court construed the term "Meal Builder" limitation to require "a computer program that allows the user to create or change a meal and view the meal's impact on customized eating goals." Case No. 2:12-cv-761, Dkt. No. 308, at 33.

Tyson argues that DietGoal's claim of infringement as to the "Meal Builder" limitation is objectively baseless.

Tyson contends that its website does not allow users to create a new recipe or modify an existing recipe, and that users of its website cannot create or modify displayed images. Therefore, according to Tyson, DietGoal's infringement argument was doomed. As with the argument on the "Picture Menus" limitation, Tyson's argument is an abbreviated restatement of the argument it has raised in its Rule 11 motion. Dkt. No. 100. Again, the Court reaches the same conclusion as it has in its order denying Tyson's Rule 11 motion. While DietGoal's position may be "something of a stretch," as the Court noted in the Rule 11 order, its position is not inherently inconsistent with the Court's claim construction and is not wholly frivolous.

### c. Theory of Damages

Tyson next points to DietGoal's theory of damages as a basis for seeking an award of attorney fees. Tyson objects that the damages opinion provided by DietGoal's damages expert improperly relied on "nuisance value" settlements; calculated damages using an improper damages formula; and proposed defendant-specific damages "without providing any defendant-specific analysis/calculation."

Tyson does not cite authority that predicates an "exceptional case" finding on the quality of a plaintiff's damages theory. Nonetheless, the Court will address Tyson's challenge to the damages theory as part of the totality of the circumstances, as dictated by the Supreme Court in Octane Fitness.

Tyson's first objection to DietGoal's damages theory is that DietGoal's expert relied on litigation-related settlements to support his damages opinion. The case law, however, provides

that, while "litigation itself can skew the results of the hypothetical negotiation," licenses are not per se unreliable simply because they arose out of litigation. ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 872 (Fed. Cir. 2010); In re MSTG, Inc., 675 F.3d 1337, 1348 (Fed. Cir. 2012); Sentius Int'l, LLC v. Microsoft Corp., No. 5:13-cv-825, 2015 WL 451950, at *3 & n.24 (N.D. Cal., Jan. 27, 2015); CPNE Corp, v. Apple, Inc., No. 5:12-cv-2885, 2014 WL 1494247, at *9-10 (N.D. Cal. Apr. 16, 2014); Dynasty Design Solutions, Inc. v. Synopsis, Inc., No. 5:11-cv-5973, 2013 WL 4537838, at *7 (N.D. Cal. Aug. 22, 2013). Tyson's perfunctory challenge to DietGoal's expert's reliance on litigation-related settlements does not persuade the Court that those settlements are, as a group, so unreliable that the expert's consideration of them rendered DietGoal's entire damages theory objectively unreasonable. While Tyson could have mounted a challenge to the use of some, or even all, of the settlements in the expert's calculation, there is no per se rule against the use of such settlements, and the Court does not regard Tyson's conduct as sanctionable because its expert proposed to rely on those settlements.

Tyson's second objection is to the formula DietGoal's expert used to calculate the proper amount of the damages award. In that regard, Tyson objects to the expert's reliance on what Tyson characterizes as "nuisance settlements" and his decision to omit the cost of litigation from his calculation of the settlement value of the case. In determining the amount of the damages award, the expert relied on a formula that sets forth the relationship between the settlement value of the case, the amount of the damages, the likelihood of success, and the cost of the litigation to each party. The formula provides that the plaintiff will assign a settlement value to the case equal to $pJ - c$, where $p$ refers to the probability of winning, $J$ refers to the estimated damages, and $c$ refers to the cost of litigation to the plaintiff. The defendant will estimate the cost of the

case to be represented by pJ + c, where c represents the cost of litigation to the defendant. See Cybor Corp. v. FAS Technologies, Inc., 138 F.3d 1448, 1475 n.3 (Fed. Cir. 1998) (en banc) (Mayer, C.J., concurring in the judgment) ("The plaintiff values the case at pJ – c. If the defendant agrees on the values assigned to the variables, the suit will cost him pJ + c."). Thus, for the plaintiff, the settlement value of the case is the product of the estimated damages times the chance of winning, minus the plaintiff's litigation cost, while the settlement cost of the case to the defendant is the product of the estimated damages times the chance of winning, plus the defendant's litigation cost. Solving the plaintiff's version of the equation for the amount of the damages award leads to the conclusion that the damages award is equal to the settlement value of the case plus the cost of litigation, divided by the likelihood of liability.

Although it is true, as DietGoal's expert stated, that omitting consideration of the cost of litigation from that formula results in a more conservative damages award, and thus is theoretically favorable to the defendant, Tyson objects that in this case the expert's decision to ignore the cost of litigation variable was misleading in light of the fact that the "settlement values in this case are all nuisance value settlements, which were only paid to avoid the cost of litigation." Dkt. No. 106, at 7. Tyson argues that in a case in which poor infringement contentions or a weak validity position reduce the likelihood of liability to near zero, the settlement value of the case would be dominated by the cost of litigation and would be a negative number. Therefore, Tyson argues, omitting the cost of litigation allowed the expert to "treat the entire settlement amount as a discounted damages award." Id. at 8.

Although Tyson disparages the formula used by DietGoal's expert, it does not point to any flaws in the formula itself. Instead, Tyson's objection to the expert's calculations, based on

the formula, is that the previous settlements the expert used to represent the "settlement value" variable were not truly representative of the value of the settlements, but instead merely reflected a willingness of defendants to settle cases against them to avoid the costs of litigation. That objection is essentially the same as Tyson's first objection, which challenged the use of prior settlements in calculating the damages in this case. The same answer applies here: there is no per se rule against using litigation settlements as a metric for determining damages. Tyson may have been able to persuade the Court that the settlements used by DietGoal's expert were unreliable for purposes of determining damages, but even if the expert's evidence were excluded, that would not necessarily render this case exceptional. It is not unusual for evidence and conclusions set forth in an expert's report to be limited or excluded altogether by the Court, but cases in which evidence is restricted or struck do not thereby become exceptional cases in which fee awards are granted.

Tyson's final objection is that DietGoal's expert did not tie his estimates of damages to specific defendants by providing "defendant-specific analysis/calculation." Dkt. No. 106, at 8. The expert's report, however, shows that he attempted to distinguish among the defendants, at least to a degree. The report divided the defendants into three tiers based on their "usage" of the accused instrumentality and the length of their infringement. Ordinarily, the question whether an expert's inferences from the examined data were questionable goes to the issue of weight, not admissibility. i4i Ltd. P'ship v. Microsoft Corp., 598 F.3d 831, 856 (Fed. Cir. 2010) ("While the data were certainly imperfect, and more (or different) data might have resulted in a 'better' or more 'accurate' estimate in the absolute sense, it is not the district court's role under Daubert to evaluate the correctness of facts underlying an expert's testimony. Questions about what facts

8

are most relevant or reliable to calculating a reasonable royalty are for the jury.") (citation omitted). And again, even if the expert's evidence were struck based on the lack of adequate specificity with respect to the damages assessed against each defendant separately, that would not compel a finding that the case is exceptional. Given that Tyson has not made a convincing showing in its motion that the DietGoal's damages case was objectively baseless, the Court denies Tyson's request that a fee award be entered based on the flaws in DietGoal's expected proof of damages.

## II.  Inequitable Conduct

Tyson's next argument is that DietGoal committed inequitable conduct before the PTO and that DietGoal's conduct in that regard supports a finding of exceptionality. Tyson is correct that proof of inequitable conduct can weigh heavily in favor of an award of attorney fees. Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276, 1289 (Fed. Cir. 2011) ("[P]revailing on a claim of inequitable conduct often makes a case 'exceptional.'"). But by the same token, inequitable conduct by the patentee does not automatically render a case exceptional. Nilssen v. Osram Sylvania, Inc., 528 F.3d 1352, 1358 (Fed. Cir. 2008) ("[T]here is no per se rule of exceptionality in cases involving inequitable conduct.").

The parties dispute what the correct burden of proof is as to Tyson's allegations of inequitable conduct. It is undisputed that proof of inequitable conduct requires "clear and convincing evidence." Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1365 (Fed. Cir. 2008). Tyson, however, argues that it need only put forward a preponderance of the evidence per the standard in Octane Fitness; it claims to use the label "inequitable conduct" merely as a shorthand. Since inequitable conduct is neither a necessary nor a sufficient condition

for a finding of exceptionality, the evidence supporting the allegation stands on its own. Thus, the Court will consider that evidence as part of the "totality of the circumstances" inquiry required by Octane, and the totality of the evidence (including both evidence of alleged inequitable conduct and other evidence) will be weighed using the preponderance of the evidence standard. If the evidence of inequitable conduct is sufficient to satisfy the clear and convincing standard, the proof of inequitable conduct will be entitled to substantial weight in that calculation.

Tyson claims that DietGoal committed inequitable conduct in two ways. First, Tyson argues that DietGoal fraudulently claimed priority to an earlier application filed by Dr. Oliver Alabaster, the named inventor on the '516 patent. DietGoal contends that the failure to claim priority in the original application was a mistake, and it offered evidence that both DietGoal and the inventor were unaware of the error until much later. Tyson's only contrary evidence is that there is no indication in the original application of an intent to claim priority through the earlier application, even though the inventor had previously filed continuations in part in other prosecutions.

Tyson argues that the original omission must have been intentional (or at least not a mistake) and that the subsequent claim to an earlier priority date was fraudulent. While it is permissible to infer an intent to deceive from circumstantial evidence, the intent to deceive must be "the single most reasonable inference able to be drawn from the evidence." Star Scientific, 537 F.3d at 1366. Based on the limited evidence offered by Tyson, the theory of fraudulent deceptive intent on Dr. Alabaster's part is not the most reasonable inference. Among other things, it is unclear why the applicant would have intentionally elected a later priority date at the

time of filing than he was entitled to. Tyson's argument fails to establish inequitable conduct on the patentee's part; in fact, it does not even constitute persuasive evidence of misconduct in the course of the prosecution and litigation of the '516 patent.

Tyson's second argument is that DietGoal committed inequitable conduct by failing to disclose the reference "Health'nstein's Body Fun" to the PTO as relevant prior art during the reexamination of the '516 patent. The "Body Fun" reference is a piece of software developed by Dr. Alabaster and sold commercially several years before the priority date asserted by the plaintiffs for the '516 patent. "Body Fun" is a child's computer game in which a player can engage in a variety of activities, including choosing and combining various food elements. The program displays nutritional information about the user's selections and calculates its effect on the user's "health score."

Tyson argues that in light of the similarity between the "Body Fun" reference and the "Meal Builder" limitation of the '516 patent, DietGoal should have disclosed the "Body Fun" reference to the PTO at least during the '516 patent's reexamination. The software was developed by the inventor of the '516 patent, and Tyson brought the software to DietGoal's attention in its answer and counterclaim, which was filed on May 2, 2013, five months prior to the issuance of the reexamination certificate on October 2, 2013.

In response, DietGoal claims that Tyson has not submitted clear and convincing evidence that the "Body Fun" reference was material to the patentability of the '516 patent. DietGoal also argues that because it used different counsel in the reexamination proceedings, knowledge imputed to DietGoal in this litigation should not be imputed to it in the context of the reexamination proceedings. Finally, DietGoal points to its expert's rebuttal report, which was

served on the defendants and was included as an exhibit to the pleadings on the section 285 motion. That report concludes that the "Body Fun" reference does not anticipate the '516 patent. Dkt. No. 125-8 at 43-66.

Based on a careful review of the materials submitted in connection with this motion, the Court concludes that "Body Fun" reference appears to possess features similar to the Meal Builder depicted in the '516 patent. Unfortunately, the presentation in the motion and the accompanying exhibits does not provide the Court will enough information to determine whether the "Body Fun" reference would have been sufficiently material that DietGoal's failure to disclose it would have satisfied the materiality prong of the inequitable conduct doctrine. Similarly, while Tyson argues that knowledge of the "Body Fun" game must be imputed to DietGoal, witnesses for DietGoal testified that different counsel were used for the district court litigation and the reexamination, and that the reexamination counsel were unaware of the "Body Fun" reference, even though the reference was cited in Tyson's answer filed in the district court. Again, the evidence on this point is not sufficient to persuade the Court that DietGoal has been guilty of intentionally withholding evidence from the PTO with deceptive intent.

One of the factors affecting the Court's determination on this issue is that Tyson did not move for summary judgment of unenforceability or invalidity based on the "Body Fun" reference, despite Tyson's awareness of that reference and its awareness that the reference was not submitted to the PTO either in the original prosecution or in the reexamination.[1]

---

[1] General Mills Sales, Inc., the defendant in one of the cases that was temporarily consolidated with Tyson's case, sought leave to move for summary judgment on inequitable conduct (under the rubric of "unclean hands") based on the failure to disclose the "Body Fun" reference to the PTO, see No. 2:12-cv-761, Dkt. No. 367-1 (Mar. 10, 2014). However, the General Mills case was transferred to the Eastern District of Virginia before any summary

By delaying the presentation of its arguments on the inequitable conduct issue until the motion for attorney fees, Tyson has put the Court in the position that it is required to rule on this issue with only minimal briefing and no substantial evidentiary development. Because the burden is on Tyson to show that this case is exceptional, the consequences of a thin record on this issue fall upon Tyson. See Lighting World, Inc. v. Birchwood Lighting, Inc., 382 F.3d 1354, 1367 (Fed. Cir. 2004) ("Based on Birchwood's belated raising of the inequitable conduct issue and the exacting standard applicable to attorney fee requests, we hold that the district court did not err in denying Birchwood's fee application on that ground."). Based on the evidence before it in the present motion, the Court holds that Tyson has failed to satisfy its burden of showing that DietGoal is guilty of intentionally seeking to deceive the PTO by concealing material prior art from the examiner during the reexamination process.

### III. Bad Faith Litigation and Misconduct

Tyson's third and final argument in support of an "exceptional case" finding is its contention that DietGoal has been guilty of litigation misconduct. Tyson accuses DietGoal of improperly requesting the Court to defer ruling on Tyson's motion to dismiss under 35 U.S.C. § 101 until after claim construction, even though none of DietGoal's arguments opposing the motion to dismiss ultimately turned on claim construction. Tyson points to this Court's order granting judgment to the defendants based on collateral estoppel, Dkt. No. 95, as evidence of this misconduct, as the Court noted that DietGoal had failed to show how any disputed claim construction issue would have affected the invalidity analysis.

---

judgment motions were filed, and the inequitable conduct issue was never presented to this Court for decision.

Tyson is correct that the Bravo court found the subject matter of the '516 patent unpatentable in light of the claim construction urged by DietGoal, which was also the claim construction adopted in this case in pertinent part. It was not obvious from the outset, however, that claim construction would be irrelevant to the decision of invalidity under section 101. For that reason, the Court is not prepared to conclude that DietGoal's request that the Court conduct claim construction before ruling on the motion to dismiss was merely a delaying tactic designed to put settlement pressure on the defendants by running up their litigation costs. Nor is it apparent to the Court that the staggered filing schedule that DietGoal employed in filing actions against various defendants was a ploy to put settlement pressure on the defendants, as opposed to being designed to enable plaintiff's counsel to handle the multiple actions that were filed alleging infringement of the '516 patent.

Tyson also accuses DietGoal of violating various scheduling orders, failing to follow a required disclosure on time, and failing to post a bond to the award of costs granted to Tyson. None of these charges appears to have had a significant effect on the disposition of the case, and they are not entitled to significant weight in assessing the totality of the circumstances bearing on whether this case is "exceptional."

**IV. The Totality of the Circumstances**

Although we find that none of the evidence by itself is sufficient to merit an award of fees, Octane Fitness requires that we evaluate all of the evidence as a whole to determine whether the case is exceptional. Tyson's best evidence relates to the "Body Fun" prior art, a possibly material reference that was not disclosed to the PTO during reexamination. As noted,

however, Tyson has not developed the evidence on that issue to the point that the Court is able to find an intent to deceive with respect to material prior art on DietGoal's part.

The Court regards it as significant that there has been no finding of inequitable conduct in this case and that neither Tyson nor any of the other defendants filed a summary judgment motion on the inequitable conduct issue. As for DietGoal's affirmative legal arguments that Tyson has challenged, none of them has been shown to be objectively unreasonable. And although DietGoal has not complied with all of the Court's filing deadlines, the Court concludes that its behavior overall does not reflect litigation misconduct. While evidence of litigation misconduct can merit a finding of exceptionality, the evidence of purported litigation misconduct in this case is not sufficient, either viewed alone or in conjunction with Tyson's other claims, to merit an exceptional case finding and an award of attorney fees.

IT IS SO ORDERED.

SIGNED this 20th day of March, 2015.

_William C. Bryson_
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE