IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DIETGOAL INNOVATIONS LLC, | § § | |
| *Plaintiff,* | § § | CIVIL ACTION NO. |
| v. | § § | 2:12-cv-00764-WCB |
| CHIPOTLE MEXICAN GRILL, INC., | § § | |
| *Defendant.* | § § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Red Robin International, Inc.'s Motion Requesting that this Case Be Found Exceptional Under 35 U.S.C. § 285 and for Award of Attorney's Fees and Costs, Dkt. No. 103. The motion is DENIED.

Section 285 of the Patent Act, 35 U.S.C. § 285, provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." The Supreme Court recently clarified the scope of section 285, holding that an "exceptional" case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S. Ct. 1749, 1756 (2014). The Court added that district courts "may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." Id. While no single element is dispositive of the question, "predominant factors to be considered, though not

1

exclusive, are those identified in Brooks Furniture [Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378 (Fed. Cir. 2005)]: bad faith litigation, objectively unreasonable positions, inequitable conduct before the PTO, litigation misconduct, and (in the case of an accused infringer) willful infringement." Stragent, LLC v. Intel Corp., No. 6:11-CV-421, 2014 WL 6756304, at *3 (E.D. Tex. Aug. 6, 2014) (Dyk, J.); see also Octane, 134 S. Ct. at 1756 n.6 ("[I]n determining whether to award fees under a similar provision in the Copyright Act, district courts could consider a 'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'"), quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 535 n.19 (1994). Ultimately, a party's entitlement to attorney fees need only be proved by a preponderance of the evidence. Octane, 134 S. Ct. at 1758.

Red Robin argues that this case should be found exceptional under section 285 for multiple reasons. Red Robin accuses DietGoal of asserting a "clearly invalid" patent, litigating an infringement position that Red Robin claims the court expressly forbade, and asserting a baseless damages theory.

I.    The Validity of DietGoal's Patent

Red Robin's first argument is that the '516 patent is clearly invalid in light of Mayo Collaborative Services v. Prometheus Laboratories, Inc., 132 S. Ct. 1289 (2012), and Alice Corp. Pty. v. CLS Bank International, 134 S. Ct. 2347 (2014). Based on this observation, Red Robin claims that DietGoal advanced a meritless section 101 argument, warranting a finding that this is an exceptional case within the meaning of section 285.

Red Robin is correct that, in a related case, DietGoal Innovations LLC v. Bravo Media LLC, 33 F. Supp. 3d 271 (S.D.N.Y. 2014), the United States District Court for the Southern District of New York held that the '516 patent was drawn to unpatentable subject matter and therefore held the patent invalid under 35 U.S.C. § 101. Judgment in this case was entered based on the collateral estoppel effect of the decision in the New York case. See Dkt. No. 95. But it does not necessarily follow that the invalidation of the '516 patent warrants an "exceptional case" finding.

The fact that a party's position does not prevail—or would not have prevailed if it had been litigated to conclusion—is insufficient by itself to warrant an award of fees. See Octane, 134 S. Ct. at 1753 (fees are not "a penalty for failure to win a patent infringement suit," but are appropriate only "in extraordinary circumstances"); IP Innovation L.L.C. v. Red Hat, Inc., No. 2:07–cv–447 (E.D. Tex. Oct. 13, 2010), ECF No. 273, at 2. (Rader, J.) ("An award of attorneys' fees . . . must be predicated upon something beyond the fact that a party has prevailed."). Red Robin must show that DietGoal's positions (individually or taken as a whole) were frivolous or objectively baseless.

Red Robin faces multiple obstacles in making such an argument as to the '516 patent's invalidity. First, the '516 patent was entitled to a presumption of validity, see 35 U.S.C. § 282(a), and Red Robin makes no argument that directly undercuts this presumption. Second, to the extent Red Robin relies on Judge Engelmayer's statements in the Bravo case that the claims of the '516 patent are similar to those invalidated in Gottschalk v. Benson, 409 U.S. 63 (1972), and Parker v. Flook, 437 U.S. 584 (1978), in support of its contention that the '516 patent was obviously invalid, the fact that the '516 patent issued well after those decisions came

3

down is prima facie evidence against such a position. So Red Robin must be arguing that a later decision was so clear that it was objectively unreasonable for DietGoal to continue in its belief that the '516 patent was valid.

Pointing to Judge Engelmayer's analysis in Bravo, Red Robin appears to argue that Mayo is the clear case that shows the invalidity of the '516 patent. The Court, however, is not persuaded that DietGoal's arguments in support of the validity of the '516 patent were wholly frivolous, particularly in light of the presumption of validity. While a sea change in patent law could occur that might require patent holders to reevaluate the validity of their portfolios, none of the cases on which Red Robin relies—Bilski v. Kappos, 561 U.S. 593 (2010), Mayo, or Alice—can be characterized as such a tide-reversing case. Absent a case presenting such a clear inflection point, the presumption of validity creates a high bar against arguing that assertion of a properly issued patent merits an award of fees that Red Robin's arguments simply cannot overcome.

Significantly, the Supreme Court decided the Alice case on June 19, 2014, after this action had been stayed pending the disposition of the parties' summary judgment motions and after almost all of the briefing on those motions had been completed. Therefore, in judging the reasonableness of DietGoal's position with respect to the section 101 issue, it is necessary to take into consideration that throughout most of the time preceding the grant of judgment against DietGoal on collateral estoppel grounds, DietGoal did not have the benefit of the Supreme Court's decision in Alice. Instead, during the time this case was being litigated, up to the motions for summary judgment and the responses to those motions, the most recent word on section 101 was in the form of the opinions of the closely divided en banc Federal Circuit in the

Alice case. See CLS Bank Int'l v. Alice Corp. Pty., 717 F.3d 1269 (Fed. Cir. 2013) (en banc). DietGoal's decision to continue defending the validity of its patent after the Federal Circuit's decision in Alice, and while the Alice case was pending before the Supreme Court, cannot be said to have been so unreasonable to render this case "exceptional."

## II. DietGoal's "Rejected" Infringement Theory

Red Robin's second argument is that DietGoal's infringement theory was wholly foreclosed by the Court's claim construction order. In construing the term "customized eating goals," the parties disputed what role mental processes played in the invention. Ultimately, the Court rejected the parties' proposals and adopted its own construction. Case No. 2:12-cv-761, Dkt. No. 308, at 18-21. The Court construed the term "customized eating goals" to mean "computer implemented user-specific dietary goals." The Court rejected the defendants' argument that the dietary goals were required to be "stored" in a computer. It also rejected DietGoal's interpretation because that interpretation "encompassed mental processes that are solely within a user's mind."

Red Robin reads that language from the Court's claim construction order to specifically reject DietGoal's infringement theory and to foreclose any infringement theory that involves mental processes. The Court does not read the same language as broadly as Red Robin advocates. Red Robin's argument is the same one that the Court considered in ruling on Red Robin's Rule 11 Motion, Dkt. No. 96, and the Court reaches the same conclusion in deciding this motion under section 285. While the Court is skeptical that DietGoal's interpretation of the Court's claim construction order is correct, the Court is not prepared to say that DietGoal's infringement position was wholly frivolous.

### III. DietGoal's Damages Theory

Red Robin next points to DietGoal's theory of damages, and contends that the flaws in that theory justify an award of attorney fees. Red Robin argues that DietGoal's expert's theory had myriad problems resulting in an unusually unreliable opinion. Red Robin cites no authority that predicates an "exceptional case" finding on the quality of a plaintiff's damages theory. However, the Court will consider Red Robin's arguments regarding DietGoal's damages theory as part of the totality of the circumstances bearing on the "exceptional case" determination, as dictated by the Supreme Court in Octane Fitness.

Red Robin begins with an objection to the formula DietGoal's expert used to calculate the proper amount of the damages award. But Red Robin makes only perfunctory arguments as to the formula itself. The objection appears to arise from the fact that "every single [settling] party settled for well below the cost of the litigation." Red Robin argues that the expert's reliance on such "below cost" settlements leads to absurd results and render the expert's opinion as to the proper damages in this case unreliable.

Licenses are not per se unreliable simply because they arose out of litigation. ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 872 (Fed. Cir. 2010); In re MSTG, Inc., 675 F.3d 1337, 1348 (Fed. Cir. 2012); Sentius Int'l, LLC v. Microsoft Corp., No. 5:13-cv-825, 2015 WL 451950, at *3 & n.24 (N.D. Cal., Jan. 27, 2015); CPNE Corp, v. Apple, Inc., No. 5:12-cv-2885, 2014 WL 1494247, at *9-10 (N.D. Cal. Apr. 16, 2014); Dynasty Design Solutions, Inc. v. Synopsis, Inc., No. 5:11-cv-5973, 2013 WL 4537838, at *7 (N.D. Cal. Aug. 22, 2013). This fact directly contradicts Red Robin's argument that "past settlements provide absolutely no reliable information about the expected damages for any particular party." The evidentiary value of a

particular license in a particular case may depend on multiple contextual factors, but the fact that "every single party settled for well below the cost of litigation" does not automatically discredit DietGoal's expert's opinion.

Red Robin's second objection to DietGoal's damages theory is that DietGoal's expert did not sufficiently connect the previous settlements with this case. Ordinarily, the question whether an expert's ultimate damages determination was sufficiently supported by the cited data goes to the weight of the expert's opinion, not its admissibility. i4i Ltd. P'ship v. Microsoft Corp., 598 F.3d 831, 856 (Fed. Cir. 2010) ("While the data were certainly imperfect, and more (or different) data might have resulted in a 'better' or more 'accurate' estimate in the absolute sense, it is not the district court's role under Daubert to evaluate the correctness of facts underlying an expert's testimony. Questions about what facts are most relevant or reliable to calculating a reasonable royalty are for the jury.") (citation omitted). In order to have the expert's evidence excluded at trial, Red Robin would need to show that the connection between the data and the expert's opinion was too tenuous to allow it to be considered by the finder of fact.

To be sure, the way the expert related the settlement evidence to his ultimate conclusions raises serious questions, such as the expert's use of only the highest and lowest settlement amounts rather than median or average amounts. In addition, the expert's report does not explain in any detail why the previous settlements are applicable to Red Robin's case, other than that they are settlements with a number of defendants accused of infringing the '516 patent. Those concerns and others may have formed a basis on which Red Robin could have moved to have the expert's evidence excluded from trial. But even if the expert's evidence were excluded, that would not necessarily render this case exceptional. It is not unusual for evidence set forth in an

expert's report to be limited or excluded altogether by the Court, but cases in which evidence is restricted or struck do not thereby become exceptional cases in which fee awards are granted.

The parties' briefing and evidence regarding the expert's evidence in this case is quite limited.  Although Red Robin's arguments are sufficient to raise serious questions about the soundness of the opinions offered by DietGoal's expert, the Court is not prepared, based on the limited nature of Red Robin's showing in its motion and the accompanying documents, to hold that DietGoal's expert's opinion was so unfounded as to render this case exceptional.

### IV.     Bad Faith Litigation

Red Robin also argues that DietGoal has proceeded in bad faith in this litigation.  In making that claim, Red Robin does not point to any particular evidence of bad faith, but simply repeats the arguments addressed previously.  Repackaging those arguments and labeling them as evidence of bad faith does not make those arguments any more persuasive.  Moreover, the Court does not find the recent decision of the district court in Lumen View Technology, LLC v. Findthebest.com, Inc., 24 F. Supp. 3d 329  (S.D.N.Y. 2014), cited by Red Robin, to be applicable here.  Red Robin emphasizes that in Lumen View, as here, the plaintiff was a "non-practicing entity" that had filed similar suits against numerous defendants seeking what Red Robin calls "nuisance value settlements."  Dkt. No. 103, at 13.  What is critical, however, is that the court in Lumen View found that the plaintiff's case on the merits was so weak that "no reasonable litigant could have expected success on the merits."  24 F. Supp. 3d at 335.  If a party can reasonably hope for success on the merits of its claim, it does not matter whether that party is a non-practicing entity, whether it sues numerous defendants, or whether it settles its claims for relatively small sums.  The "exceptional case" finding turns mainly on whether the claim is

plausible or objectively baseless. The court in Lumen View found that the plaintiff had pursued a plainly meritless infringement theory. The Court in this case does not reach the same conclusion and therefore does not find, as the district court did in that case, that the circumstances justify an attorney fee award.

### V. Conclusion

Considering the evidence as a whole, the Court finds that this case does not qualify as an exceptional case and that award of fees is not warranted.

IT IS SO ORDERED.

SIGNED this 20th day of March, 2015.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE